[Civ. No. 1421.   Second Appellate District.—December 26, 1913.]

## JOSEPH MESMER, Appellant, v. THE BOARD OF PUBLIC SERVICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Respondents.

MUNICIPAL CORPORATION—AMENDMENT OF CHARTER—BOARD OF PUBLIC SERVICE COMMISSIONERS — CONSTITUTIONAL LAW.—The amendments to the freeholders' charter of the city of Los Angeles, creating a board of public service commissioners and giving it control of the revenues derived from the sale of water, are not violative of section 13 of article XI of the constitution, which prohibits the legislature from delegating municipal functions to special commissions.

ID.—FREEHOLDERS' CHARTER—APPROVAL BY LEGISLATURE—POWER TO CHANGE.—The legislature has no power to mould or change a freeholders' charter of a city when such instrument is before it for approval.

ID.—APPROVAL OF FREEHOLDERS' CHARTER BY LEGISLATURE—WHETHER AN EXERCISE OF LAW-MAKING POWER.—The legislature does not, when it approves by resolution a freeholders' charter for a city, exercise law-making power in the sense intended to be expressed in the prohibitory clause of the constitution, that "the legislature shall not delegate to any special commission, private corporation, company, association, or individual, any power to make, control, appropriate, supervise, or in any way interfere with, any county, city, town, or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments, or perform any municipal functions whatever."

ID.—MUNICIPAL CHARTERS—WHETHER SUPERIOR TO GENERAL STATE LAWS.—Municipalities are now given the power to draft charters whose provisions, in so far as they refer to municipal affairs, are superior to the general state laws. The legislature cannot enact any law which will repeal or change such charter provisions.

ID.—PUBLIC SERVICE COMMISSIONERS—POWERS—PURCHASE OF GROUND AND ERECTION OF BUILDING.—The board of public service commissioners of the city of Los Angeles has power, under the freeholders' charter, to purchase ground and erect thereon an administrative building for its uses, the cost thereof to be paid from the revenue of the water department.

ID.—CITY INDEBTEDNESS—CONSTITUTIONAL LIMIT.—Section 18 of article XI of the constitution, which forbids a city from incurring any indebtedness exceeding in any one year the income and revenue

provided in such year, without the favorable vote of two-thirds of the electors, is not applicable to the board of public service commissioners in carrying on such an undertaking.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

H. S. McCallum, and Hutton & Williams, for Appellant.

Albert Lee Stephens, City Attorney, and Geo. E. Cryer, Assistant City Attorney, for Respondents.

JAMES, J.—A demurrer interposed to the amended complaint of plaintiff was sustained, and this appeal was taken from the judgment of dismissal which followed.

By the provisions of a freeholders' charter of the city of Los Angeles, adopted in 1903, there was created a water department which was provided to be placed under the control of a board consisting of five members. In March, 1911, an amendment to the charter was regularly adopted, by which amendment a department of public service was provided for, which department, in addition to being given charge of the water service, was given control and management also of such electric works and electric systems as might thereafter be acquired. The board of public service commissioners created under the latter amendment became the successors of the board of water commissioners first referred to. Plaintiff's complaint set out that the last named board, on the eighth day of November, 1909, for the purpose of acquiring property upon which to erect a building for the uses of its department, contracted to purchase a lot in the city of Los Angeles for the sum of one hundred and ninety-five thousand dollars, payable five thousand dollars in cash, the balance to be represented by two mortgages, one for the sum of seventy thousand dollars, and one for the sum of one hundred and twenty thousand dollars. It was further set out that out of the income and revenue arising from the water department, at the time of bringing the action, a total of one hundred and fifteen thousand dollars besides certain installments of interest, had been paid on account of the purchase price of the lot, and

that excavation had been made thereon to accommodate a
foundation for the proposed building. Further, that the
moneys contracted so to be paid exceeded the income and
revenues of the water department for the year mentioned, and
that the board threatened to execute a contract which would
provide for the erection and completion of the proposed
building. An injunction was prayed for, that defendants be
enjoined from making any further payments on account of
the purchase price of the lot, and from entering into a con-
tract for the erection of the building.

It is appellant's contention that the charter provisions which
gave to the board of water commissioners and its successor,
the board of public service commissioners, control of the
revenues derived from the sale of water are unconstitutional
as violative of section 13 of article XI of the constitution,
which provides as follows: "The legislature shall not delegate
to any special commission, private corporation, company, asso-
ciation, or individual, any power to make, control, appro-
priate, supervise, or in any way interfere with, any county,
city, town, or municipal improvement, money, property, or
effects, whether held in trust or otherwise, or to levy taxes or
assessments, or perform any municipal functions whatever."
The provisions of this section are restrictive of the general
law-making power of the legislature. If it could be said
that a freeholders' charter adopted by a vote of the people of
a city under the express sanction of the constitution, is to be
viewed as an enactment of the legislature, then there might
be force in the point made. As a test of that matter it may
be here inquired: What power has the legislature to mould or
change a freeholders' charter when such an instrument is
before it for consideration? The answer is that it has no
such power. It is required that a freeholders' charter to be-
come effective must be approved by the legislature; this ap-
proval is made by resolution and not by bill. It has been
held that the legislature does not exercise law-making power
when it approves such charters. (*People* v. *Toal,* 85 Cal. 333,
[24 Pac. 603]; *People* v. *Gunn,* 85 Cal. 238, [24 Pac. 718].)
In *Ex parte Sparks,* 120 Cal. 395, [52 Pac. 715], Justice
Temple in the main opinion, declared that because amend-
ments to the constitution, adopted subsequent to the render-
ing of the decisions in *People* v. *Gunn* and *People* v. *Toal,*

provided that when the approval of the legislature is given to a freeholders' charter, it "may be by concurrent resolution," the force of the conclusions announced in the cases cited was weakened and that the question as to whether the legislature when so acting exercised law-making power should be considered an open one. This view was concurred in by only one other justice of the court, the two remaining justices who concurred in the judgment refusing to agree to that declaration. If the decisions in the Gunn and Toal cases correctly declared the law under a constitutional provision which required the legislature to approve or reject a freeholders' charter without power of amendment, and which did not provide how that approval should be manifested, whether by bill or resolution, it is indeed difficult to perceive any reason why the effect of these decisions is impaired in the least by subsequently adopted constitutional amendments which contain the express declaration that the approval may be by concurrent resolution. It would seem that approval by bill, which is the method prescribed for the enactment of laws in this state (Cal. Const., art. IV, sec. 15), would be inappropriate under either provisions of the constitution. A bill is ordinarily subject to amendment as it passes through the two legislative houses, but the legislature possesses no power to change or modify a charter adopted by the people of a municipality. The electors through their board of freeholders, determine upon the provisions of the law under which they propose to be governed; the legislature merely assents, when its approval is given, that the municipality may be so governed. "The legislative power we understand to be the authority, under the constitution, to make laws, and to alter and repeal them." (Cooley on Constitutional Limitations, 7th ed., p. 131.) In the case of *State* v. *Dahl,* 6 N. D. 81, [34 L. R. A. 97, 68 N. W. 418]), it is said, referring to a joint resolution of the legislature: "The joint resolution has no title, its enacting clause is not couched in the language prescribed by the constitution to be employed in the enactment of ordinary laws; nor was it ever submitted to the governor for approval. Whenever it is necessary that the expression of sovereign will should take the form of ordinary legislation, these requirements must be strictly observed. . . . Under many state constitutions containing provisions

with regard to the enactment of statutes similar to those found in the organic law of this state, it has been, and is, customary to express by joint resolution the will of the legislature on matters not falling within the category of ordinary legislation.'' These citations are cumulative to the point that the legislature does not, when it approves by resolution a municipal charter, exercise law-making power in the sense intended to be expressed in the prohibitory clause of the constitution here claimed to have been violated. Municipalities are given the power to draft charters the provisions of which, in so far as they refer to municipal affairs, are superior to the general state laws. The legislature cannot enact any law which will repeal or change such charter provisions. This result has followed an amendment to the constitution adopted in 1896, before which time general statutes of the state were of superior force.

Appellant insists, however, that even though the charter provisions which created the board of water commissioners and its successor, violated no restrictive clauses of the constitution, yet that the language used in those provisions does not extend the power of the commission so far as to permit it to purchase ground and erect an administrative building for the uses of its department. The commission having charge of the city water department as created by the charter, constitutes an agency of the municipal government, but one possessed of independent functions; it is a legal entity. It serves as the managing and directing power of the utility which it has in charge and in its sphere of action is free from interference by the legislative body. It possesses the power and the sole power to authorize the expenditure of money derived from the sale of water, as its discretion may suggest, including the power to purchase additional lands and water-rights and other property necessary to the maintenance of the utility. It may sue and be sued alone and under its own name. Its organization and powers comport with the modern idea of a commission form of government where, instead of lodging all administrative authority under one general head, control is divided and separate departments transact with greater freedom of action and more extensive authority the business allotted to them. Under such a system the common council is relieved of many of its responsibilities, and like-

wise is shorn of much of its former power and becomes more especially a distinctive legislative body. Having seen over what a wide range the power of the commission extends, it can better be determined what means may be permitted to it through which to perform the duties assigned to it. It is required that the board shall maintain an office and prescribe office hours for the convenience of the public; also that it shall hold regular stated meetings once each week. It is nowhere required that the city council shall provide this office for the board of commisioners, nor that that office shall be at the city hall. If then, as is clear, the board is authorized to maintain its own office, how can it be said that such an office may not be obtained by purchase or erected by contract? If one can legally be purchased or erected, what is there in the charter provisions which limits the expenditure of money in that direction? Certainly no limit can be set to that power, except such as the discretion of the board reasonably exercised may dictate. It is not shown by any allegation in the complaint in this action that the commission in proceeding to purchase ground and arrange for the construction of a building was chargeable with improper motives or bad faith, and there it would seem that the discussion upon this particular contention must end.

Section 18 of article XI of the constitution, which forbids a city, etc., from incurring any indebtedness exceeding in any one year the income and revenue provided in such year without the favorable vote of two-thirds of the electors, is not applicable. The prohibition in this section provided does not extend to a board of commissioners exercising functions under the charter of a city, such as appears here. It is a sufficient answer to this contention to note that such a board is not named or described in the section of the constitution which is invoked. (See *In re Madera Irrigation Dist.*, 92 Cal. 296, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675] ; *Robertson* v. *Board of Library Trustees*, 136 Cal. 403, [69 Pac. 88].) Furthermore, the money used and proposed to be used in the purchase of the lot of ground and the erection of the building was not to be taken from the ordinary revenues of the city, and to that extent it may be said that the city's credit was not involved in the incurring of the indebtedness.

Appellant presents no other points for consideration, and from the conclusions expressed as to the propositions discussed it follows that the judgment appealed from should be affirmed. It is so ordered.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 24, 1914.