[Civ. No. 5317.  First Appellate District, Division One.—December 29, 1925.]

C. A. STORKE, Appellant, v. THE CITY OF SANTA BARBARA (a Municipal Corporation) et al., Respondents.

[1] MUNICIPAL CORPORATIONS—MUNICIPAL AFFAIRS—CHARTERS—CONSTITUTIONAL LAW.—The 1914 amendment to section 6 of article XI of the state constitution declares an entirely new scheme for the granting of municipal charters, the effect of which places cities organized thereunder entirely beyond the interference of general laws in regard to the administration of municipal affairs.

---

1.  See 18 Cal. Jur. 783.

[2] ID.—MUNICIPAL TAXATION—CONTRAVENTION OF STATE LAWS.—Since the adoption of the amendment of 1896 to section 6 of article XI of the state constitution a charter provision relating to a purely municipal affair contravenes the general law pertaining to the same subject; and the matter of municipal taxation is a municipal affair, and a scheme of local taxation declared by a municipality is superior to the general law of the state on that subject.

[3] ID.—EXPERT APPRAISAL—CONFLICT BETWEEN CHARTER AND STATE LAWS.—The charter of the city of Santa Barbara, in so far as it requires a scientific appraisal to be made of the real property within the city by a recognized expert, at intervals of every five years, contravenes the general law upon the subject of said appraisal, thereby making it unnecessary for the legislative body of that city to take further action by ordinance to accomplish that purpose.

[4] ID. — SELF-EXECUTING CHARTER — APPOINTMENT OF APPRAISER — ORDINANCE UNNECESSARY.—Section 82 of the charter of the city of Santa Barbara, relating to the matter of scientific appraisal of the real property within said city for the purposes of municipal assessment, is self-executing and by its own terms prescribes the manner in which the power of the city in that respect shall be exercised, namely, by providing that said scientific appraisement shall be made by a recognized expert; and the duty of fixing the terms of employment of such recognized expert is an administrative one, which may be carried out by the legislative body without the aid of an ordinance.

[5] ID.—EXCESSIVE COMPENSATION—FRAUD—REMEDY OF TAXPAYER.— Any attempt by the council of the city of Santa Barbara to fix the compensation for the work of appraisal authorized by its charter at an unconscionable sum would at least amount to a constructive fraud against the city, for which ample remedy would lie at the instance of a taxpayer.

[6] ID.—EMPLOYMENT OF APPRAISER—EXECUTION OF CONTRACT.—Where the contract for the employment by the city of Santa Barbara of an expert appraiser was prepared by the city attorney and signed pursuant to a motion adopted by the council to the effect, and later, after the signed contract was laid before the council for consideration at a regular meeting thereof and, by resolution, was approved and ratified, it became the contract of the city.

[7] ID.—CREATION OF NEW OFFICE—DIVISION OF ASSESSOR'S DUTIES.— The employment by the city of Santa Barbara of an expert appraiser having been authorized by the charter, and his duties having been entirely independent of those of the assessor, there was no merit in the contention that such employment, in effect,

---

2.  See 18 Cal. Jur. 778, 806.

6.  See 18 Cal. Jur. 1014.

amounted to the creation of a new office, or divided the duties of the assessor or made of the appraiser a deputy or assistant assessor, which had to be accomplished by ordinance.

[8] ID.—DATE OF APPRAISAL—PERFORMANCE OF CONTRACT.—The requirement of the charter of the city of Santa Barbara that the expert appraisal should be made "as if at 12 M. on the first Monday in March" must be read into and considered a part of the contract for the employment of the expert appraiser; and the fact that certain portions of said appraisal may have been prematurely made and filed would not affect the power of the council to enter into the contract, but relates merely to the performance of the contract.

[9] ID.—VERIFICATION OF CLAIMS—PRESENTATION TO COUNCIL.—Under the charter of the city of Santa Barbara, the claims of said expert appraiser were not required to be verified and be presented to or approved by the council, where they were paid without suit.

---

(1) 28 **Cyc.**, p. 286, n. 29.   (2) 28 **Cyc.**, p. 286, n. 29, p. 1659, n. 7.   (3) 28 **Cyc.**, p. 1699, n. 34.   (4) 28 **Cyc.**, p. 1699, n. 34. (5) 28 **Cyc.**, p. 1732, n. 96.   (6) 28 **Cyc.**, p. 1696, n. 15.   (7) 28 **Cyc.**, p. 1696, n. 15.   (8) 28 **Cyc.**, p. 1696, n. 15.   (9) 28 **Cyc.**, p. 1749, n. 92.

APPEAL from a judgment of the Superior Court of Santa Barbara County. Merle J. Rogers, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

S. J. Bingham for Appellant.

W. P. Butcher, City Attorney, for Respondents.

KNIGHT, J.—This action was brought by plaintiff as a resident and taxpayer of the City of Santa Barbara to annul a certain contract purporting to have been entered into on behalf of said City with Norman E. McFadden authorizing the latter to make "a scientific appraisal" of the real property within said City for the purposes of municipal assessment; also to require the said McFadden to repay to the City treasurer certain sums of money received by him as compensation for part of work performed pursuant to said contract, and to enjoin any further payment from being made thereunder. A demurrer to the complaint upon the grounds of insufficiency of facts, mis-

joinder of parties defendant, and uncertainty was sustained by the court with leave to amend, and plaintiff having declined to amend, judgment of dismissal was entered, from which judgment plaintiff appeals.

The City of Santa Barbara was organized under a freeholders' charter, adopted and ratified, pursuant to the amendment of 1914 to section 6 of article XI of the state constitution (Stats. 1917, p. 1824). Said charter became effective on the first Monday in January, 1918, and under it the City was being governed when the transaction in question took place. The charter provides, among other things, that all powers of the City, except as otherwise provided in the charter, are vested in a council of five members (Charter, sec. 3). Every two years the council elects from its membership a presiding officer to be known as the Mayor (Charter, sec. 9). Further provision is made for the appointment of a manager who shall be the administrative head of the municipal government and whose general and specific powers and duties are defined by said charter (Charter, sec. 37). An assessor is also appointed by the council (subd. a, sec. 33). The charter declares a scheme of local taxation under the title "Assessment of Taxes," which expressly or by similarity of provisions follows, in a general way, the procedure prescribed by the general law for the collection of county taxes, It departs, however, from the general law in some features, the most important of which is set forth in section 82 of said charter, reading as follows: "In preparation for the first assessment of taxes after this Charter takes effect, and at intervals of five years thereafter, the Council shall, at or before its first meeting in February, provide for a scientific appraisal by a recognized expert, of all real property in the City, provided, that if such appraisal shall have been made before this Charter takes effect, a new appraisal shall be required only at intervals of five years after such previous appraisal. This appraisal shall be made as if at 12 M. on the first Monday in March, and shall be used by the Assessor as the basis for the assessment for that year, and he shall revise his valuation in each intervening year. . . . "

It is alleged in the complaint that at a meeting of the council held on December 12, 1922, an oral motion was regularly adopted by the council instructing the city at-

torney "to prepare a contract to be executed by the City manager on behalf of the City with Norman E. McFadden as scientific appraiser as provided in section 82 of the charter, and that the compensation be fixed at the sum of $5000.00 for the completed work, leaving the contracting party to bear all and every of his own expenses: That the contract provide for a bond on the part of Mr. McFadden in the sum of $5000.00 for the faithful performance of his contract." The minutes of that meeting also show the following entry: "The council informally agreed that suggestion be made to the City Attorney to incorporate in the contract provision that the $5000.00 be paid in weekly payments in advance and in proportion to the amount of work performed, also that the necessary maps shall be provided by the city." Following the adoption of said motion, a written contract was prepared wherein the said Norman E. McFadden was named as party of the first part and the City of Santa Barbara was named as the party of the second part, the terms of which contract, after reciting the substance of the charter provision requiring said appraisal to be made, provided: "It is hereby agreed that the party of the first part, shall and does hereby promise to employ all the necessary assistance at his own cost and expense and make a scientific appraisal of all the real property of said city for the fiscal year of 1923–1924: That he will commence the execution of such work within ten (10) days from the date hereof, and prosecute the same faithfully and diligently from day to day until the whole thereof shall have been carefully completed, and a full and complete scientific report made thereof to the said party of the second part on or before the 15th day of March, 1923. That the party of the second part shall furnish all such maps as may be necessary for the proper prosecution of said work free of charge to the party of the first part. And in consideration of such work being completed within said time, said party of the second part promises to pay him, said party of the first part, five thousand ($5,000.00) dollars, in the following manner to-wit—at the end of each week the party of the first part shall present a full report on all such work done by him for that week to the city assessor of the party of the second part, and if such work shall be satisfactory to

the said assessor, he, said assessor, shall thereupon accept the same and when so accepted shall report the same to the Manager of said City, who shall cause a warrant to be drawn upon the treasurer of said city in favor of the party of the first part for 90% of all the work so done up to that time in the ratio such work shall bear to the entire work to be so done, and when the entire work is completed, a warrant shall be drawn on the treasurer for whatever sum may then remain due and unpaid to the party of the first part, it being understood however and expressly agreed that such work shall not be deemed complete until the same shall be presented to said council and by it accepted by an order spread upon its minutes.'' On December 14, 1922, said contract was signed by the said McFadden and by the City manager for the City. Subsequently, and on December 21, 1922, said contract was placed before the council at a regular meeting thereof and the following resolution was duly passed: ''Resolution No. 366 (New Series). A resolution providing of and authorizing the appraisal by a recognized scientific expert of the real property in the city of Santa Barbara and confirming all acts of the council of said city relative to such matter. Whereas the Council of the city of Santa Barbara did on the 12th day of December, 1922, at a special adjourned meeting called for that purpose, provide for a scientific appraisal of all the real property within said city by a recognized expert, and did authorize the manager of said city to enter into a contract with Norman E. McFadden as such appraiser, and whereas said manager has executed with said Norman E. McFadden a contract by the terms of which he, the said Norman E. McFadden, is to make such appraisal as such expert, now therefore, Be it resolved by said council that all the acts done at said special adjourned meeting by said council relating to said matter of assessment be, and the same are hereby ratified and affirmed, and the said Norman E. McFadden is hereby employed as such appraiser for said purpose and said contract is hereby approved and the said Norman E. McFadden is hereby declared to be the legally appointed expert appraiser for said purpose, and is authorized to make such appraisement as is provided by and in conformity with section 82 of the charter of said city.''

The complaint further alleges that on January 10, 1923, McFadden entered upon the discharge of his duties as such appraiser, and on January 16, 1923, having completed part of the appraisal, presented a claim against the City therefor in the sum of $288, which claim particularized the amount of work performed, was approved by "W. W. Smith" (whose official capacity does not appear from the record), and by two members of the finance committee of said council, after which it was "approved for payment" by the City manager. A warrant was then drawn by the auditor for payment of said claim and the warrant was paid by the treasurer. Subsequently, and on February 13, 1923, McFadden completed another portion of said appraisal and presented a claim therefor in the sum of $1,008. Said claim was substantially in the same form as the first one and was likewise approved (except by "W. W. Smith"), allowed and paid. On March 8, 1923, this action was commenced and no further payments were thereafter made.

The principal question presented by this appeal is whether the transaction involving the execution of said McFadden contract is legal, in view of the fact that it was not grounded upon the passage of an ordinance. Appellant's contention that said transaction is a nullity is based first upon the theory that the City of Santa Barbara, in the administration of its municipal affairs, is controlled by general laws until those general laws are contravened by municipal ordinances; that inasmuch as the general law makes no provision for a scientific appraisal by an expert appraiser for the purposes of assessment, such general law controls until the legislative body of the City has enacted an ordinance to supersede it. This the City of Santa Barbara admittedly has not done. It will be found, however, that the cases cited by appellant on page 15 of his opening brief, in support of his claim as to the application of general laws, relate only to cities organized under the 1896 amendment to section 6 of article XI of the constitution (*City of Long Beach* v. *Lisenby,* 175 Cal. 575, 582 [166 Pac. 333]). [1] As to cities like Santa Barbara, which have been organized under, or which have by charter amendment brought themselves within the constitutional amendment of 1914, a different rule is held to prevail.

That amendment, according to the cases hereinafter cited, declares an entirely new scheme for the granting of municipal charters, the effect of which places cities organized thereunder entirely beyond the interference of general laws in regard to the administration of municipal affairs. A clear and comprehensive statement of the scope of that amendment, and the effect of the decisions which have since been rendered construing it, is set forth in an opinion written by Mr. Justice St. Sure, in the case of *Bank* v. *Bell,* 62 Cal. App. 320 [217 Pac. 538] (18 Cal. Jur. 783). It is as follows: "To recapitulate, it appears that, since the 'municipal affairs' amendments of 1914 to the constitution, for such cities as have brought themselves within the condition of the amendments, the law is firmly established as follows: The powers of the cities are not derived from the legislature, but from a freeholders' charter directly provided for by the constitution. The city in its charter may make and enforce all laws and regulations in respect to municipal affairs subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by the general laws. The powers of the city are all-embracing, restricted, and limited by the charter only and free from the interference of the state by general laws. The result is that the city has become independent of general laws upon municipal affairs. Upon such affairs a general law is of no force. If its charter gives it powers concerning them, it has those powers. If its charter is silent as to any such power, no general law can confer it. As to municipal affairs the charter, instead of being a grant of power, is, in effect, a limitation of powers. The city can exercise the power if the charter does not prohibit it." The authorities upon which that statement of the law is founded are cited and briefly discussed in the opinion, among them being *Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441 [166 Pac. 351]; *Cole* v. *City of Los Angeles,* 180 Cal. 617 [182 Pac. 436]; *Morgan* v. *City of Los Angeles,* 182 Cal. 301 [187 Pac. 1050]; *Matter of Nowak,* 184 Cal. 701 [195 Pac. 402]; *Matter of Galusha,* 184 Cal. 697 [195 Pac. 406]; *Los Angeles Gas & Electric Corp.* v. *City of Los Angeles,* 188 Cal. 307 [205 Pac. 125]. See, also, 18 Cal. Jur. 784. It would therefore seem that

appellant's theory of the application of general laws to municipal affairs of the City of Santa Barbara cannot be sustained. [2] But, aside from that question, it has been the established rule in this state ever since the adoption of the constitutional amendment of 1896 to said section 6 of article XI that a charter provision relating to a purely municipal affair contravenes the general law pertaining to the same subject; and it has been furthermore specifically held that the matter of municipal taxation is a municipal affair, and, accordingly, that a scheme of local taxation declared by a municipality is superior to the general law of the state on that subject (*Keyes* v. *San Francisco,* 177 Cal. 313 [173 Pac. 475]; *Ex parte Braun,* 141 Cal. 204 [74 Pac. 780]). [3] The City of Santa Barbara has declared in its charter a scheme of local taxation, in the adoption of which part of the general law has been expressly incorporated (Charter, sec. 89). But it has departed from the procedure of the general law in requiring a scientific appraisal to be made of the real property within the City by a recognized expert, at intervals of every five years. It will therefore be seen that the charter itself, which emanates from the constitution, has contravened the general law upon the subject of said appraisal, thereby making it unnecessary, in any event, for the legislative body of the City to take further action by ordinance to accomplish that purpose.

[4] The next question arising is whether, as appellant contends, the charter itself requires the passage of an ordinance in order to carry into effect the provisions of said section 82, relating to the matter of scientific appraisal. As to this point appellant relies on section 6 of the charter, which reads: "Except as otherwise provided, by this Charter or by the Constitution of the State, the Council may, by ordinance, prescribe the manner in which any power of the City shall be exercised." We are of the opinion that said section 6, reasonably construed, cannot be held to apply to the matter at issue, for the reason that said section 82 is obviously self-executing and by its own terms prescribes the manner in which the power of the City in that respect shall be exercised, namely, by providing that said scientific appraisal shall be made by a recognized expert. The duty of fixing the terms of

the employment of such recognized expert is, we believe, an administrative one, which, like many other administrative duties, may be carried out by the legislative body without the aid of an ordinance. The question of what constitutes an administrative duty is dealt with in the case of *Earl* v. *Bowen*, 146 Cal. 754 [81 Pac. 133], and upon the reasoning of that case generally and the conclusions reached therein, we think that the action of the council in the case before us, in proceeding by contract, may be properly sustained. Our conclusion that the passage of an ordinance is not essential is further supported, we think, by the reading of said section 82 in its entirety. The second paragraph thereof provides as follows: "Whenever such appraisal is to be made, the council may, with the consent of the Board of Supervisors, provide *by resolution* for a joint appraisal . . . in which case *the resolution* shall authorize the payment by the city of such joint appraisal." (Italics ours.) Apparently there can be no good reason assigned, at least none has been brought to our attention, why the framers of the charter should have intended to make a distinction between a joint and a sole appraisal, and allow a joint appraisal to be obtained pursuant to the adoption of a resolution, but require that a sole appraisal be obtained only by means of the passage of an ordinance. The possible result of the passage of such an ordinance should also be taken into consideration in determining whether it was intended by the charter framers that said charter provision should remain inoperative in the absence of the passage of an ordinance. In this regard the charter reveals that all ordinances passed by the City, excepting those specified in section 114 thereof—which excepted classes do not include an ordinance of the character of the one under discussion—are subject to referendum (Charter, secs. 111, 112, 113). If, therefore, as appellant contends, the passage of an ordinance be essential to effectuate the obtaining of such scientific appraisal, and such ordinance does not, as appellant further contends, become operative for a period of thirty days, the existence of dissatisfaction on the part of some of the electors over the question of the choice of the appraiser or in reference to the terms of his employment would allow a referendum to imperil and possibly defeat one of

76 Cal. App.—4

the mandatory requirements of the taxing system of the city. We are not prepared to say that such a situation was contemplated or intended. For the foregoing reasons we believe that the passage of an ordinance is not essential to the carrying into effect that portion of section 82 in question.

[5] Appellant asserts that if the council be allowed to proceed in this matter by contract it will open the door to abuse in that the council might allow exorbitant sums to be paid for the work of appraisal. Answering this proposition it may be said that any attempt to fix the compensation for such work at an unconscionable sum would at least amount to a constructive fraud against the City for which ample remedy would lie at the instance of a taxpayer. Fraud is not made one of the elements of this suit.

[6] In regard to the legality of the execution of the contract, the facts pleaded in the complaint show that the contract was prepared by the City attorney and signed pursuant to a motion adopted by the council to that effect. Later, the signed contract was laid before the council for consideration at a regular meeting thereof, and, by resolution, duly passed on December 21, 1922, was approved and ratified. It thereby became the contract of the City. The matter of obtaining a scientific appraisal is, as already pointed out, one of the essential preliminaries to be followed in complying with the mandatory provisions of the taxation scheme of the City and therefore relates directly to the matter of the tax levy. Under section 29 of said charter a resolution "relating to . . . the annual tax levy" becomes operative immediately.

[7] Appellant further contends that the employment of an expert appraiser, in effect, amounts to the creation of a new office, or divides the duties of the assessor or makes of the appraiser a deputy or assistant assessor, and that, consequently, under section 35 of the charter, his employment must be accomplished by ordinance. We find no merit in the point. His employment is authorized by the charter itself and the duties he is required to perform are entirely independent of those of the assessor.

[8] The further point is made that the contract is illegal in that it did not provide, in accordance with the charter provision to that effect, that the scientific appraisal

should be made "as if at 12 M. on the first Monday in March." We think the terms of the contract do not violate the charter provision. The contract provides merely that at the end of each week said appraiser "shall present *a full report* of all such work done by him for that week to the city assessor" (italics ours), and, if such work be satisfactory and accepted, he shall, subject to approval of the City manager, be entitled to receive ninety per cent of the compensation due for the work done up to that time. The requirement of the charter that said appraisal shall be made "as if at 12 M. on the first Monday in March" must, of course, be read into and considered a part of the contract, but the fact that certain portions of said appraisal may have been prematurely made and filed does not affect the power of the council to enter into the contract. It relates merely to the performance of the contract. [9] It is also alleged in the complaint that the McFadden claims were not verified and were not presented to or approved by the council. Appellant has not cited us to any charter provision or other law of the City requiring those things to be done, and in view of section 41 of said charter, which requires only that "all bills against the city must be approved by the heads of departments, and, . . . countersigned by the Manager, before presentation to the auditor," it would seem that verification of claims and presentation of them to the council are not necessary. Section 124 of said charter provides that "no suit may be brought upon any claim for moneys or damages against the City until the claim has been presented to the council and rejected in whole or in part"; but the McFadden claims were paid without suit.

It is our opinion that the demurrer was properly sustained. Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1926.