[Civ. No. 10162. First Appellate District, Division One.—June 3, 1936.]

CHARLES LEE TILDEN et al., Respondents, v. SHERMAN G. BLOOD, as City Clerk, etc., Appellant.

408

William J. Locke, City Attorney, and Frank W. Creely for Appellant.

H. Albert George, Stanley D. Whitney, Breed, Burpee & Robinson, Augustine C. Keane, Charles B. Morris and Gilbert D. Boalt for Respondents.

KNIGHT, J.—This is an appeal by the City Clerk of the City of Alameda from a judgment of the superior court granting a peremptory writ of mandate directing him to certify as sufficient two recall petitions filed with him for the purpose of initiating an election for the recall of a city councilman named Hans W. Roebke.

The minimum number of signatures necessary to initiate the election was 3,818. The first petition, referred to in the record as the original, was filed on July 31, 1935. It had attached thereto 5,099 signatures. The provisions of the city charter (sec. 11, chap. II, art. XI) imposed upon appellant the mandatory duty to examine said petition and from the records of registration to ascertain and determine whether it was signed by the requisite number of qualified electors of said city, and within a limited time to attach to said petition his certificate, properly dated, showing the result of such examination. The time allowed for such examination and certification expired on August 12, 1935; but appellant wilfully and arbitrarily refused, so the trial court found, to certify whether said petition was sufficient or insufficient until September 25, 1935, at which time he attached his certificate to the effect that 567 signers had withdrawn or revoked their signatures and that he had rejected 1269 more ''as not conforming to law and to the Charter'', and that therefore said petition was insufficient. On October 9, 1935, a supplemental petition was filed containing 705 signatures; and on October 21, 1935, appellant attached his certificate thereto setting forth that 197 of the signers had withdrawn or revoked their signatures and that he had rejected 156 more as not conforming to law and to the charter, leaving a net balance on both petitions of only 3,615 names, or 203 less than the requisite minimum number to initiate said election; and thereupon appellant certified both petitions insufficient. Respondents then instituted the present proceeding, and at the trial each disputed signature was taken up and considered separately; the original registration affidavits of the signers were produced in court and used in determining the issues involved; and from

the evidence before it the trial court found that appellant had either arbitrarily or illegally disallowed 959 signatures which it ordered restored, thereby bringing up the total number of valid signatures to 4,574, or 756 more than the requisite number to call said election; whereupon appellant was directed to certify said petitions as sufficient. Besides finding generally that appellant's disallowance of the 959 signatures so restored was arbitrary or illegal, the trial court in its decision grouped the restored signatures according to the various seventeen grounds upon which appellant had rejected them, and made specific findings as to each group, from which it appears that some groups were rejected by appellant for no apparent reason at all, while others were disallowed upon groundless theories of law. In fact, a large number of names were restored on stipulation of appellant, and many others on stipulated facts.

Ten points are urged for reversal, but an examination of them in connection with the record demonstrates that the appeal is wholly without merit. ▇ Several of the points so urged are in substance an attack upon the sufficiency of the evidence to support the findings as to certain groups of signatures which the trial court declared appellant had rejected arbitrarily. These groups included more than 480 names. They had been rejected upon the grounds that the signatures on the petitions did not correspond with those on the registration affidavits, or that the dates were invalid or had been inserted or altered by some other person, or that the signatures had been erroneously precincted. The record discloses, however, that at the trial appellant stipulated to the restoration of approximately 150 of said signatures; and as to the remainder of them, the trial court's finding that they were arbitrarily rejected by appellant is manifestly binding on this appeal for the reason that such finding is based largely upon the result of the checking of said signatures with those appearing on said registration affidavits, which formed no part of the record on appeal. ▇ In this connection appellant raises the technical point that said original registration affidavits were never formally introduced and received in evidence, and that consequently the trial court's findings based thereon are without evidentiary support. Even though they were not so formally introduced and received in evidence, appellant is not in a position to complain about the matter for

the reason that when said affidavits were produced in court, appellant expressly stipulated not only that they were the original records, but that the same might be used for all purposes in the trial and determination of the issues involved, and the record shows they were so used. Appellant's only objection to their formal reception in evidence was that they would "clutter up" the record.

Entirely aside, however, from the groups of signatures restored upon the ground that they had been arbitrarily rejected, it affirmatively appears that the trial court restored also approximately 280 additional signatures about which appellant raises no question whatever on this appeal. Some were restored on stipulation of appellant; others had been illegally rejected by appellant upon the assumption they were duplicates; and the remainder consisted of purported revocations which appellant erroneously recognized. It will be seen, therefore, that in any event there are more than enough signatures which are admittedly valid to overcome the deficiency of 203 declared by appellant.

Then again, the record discloses that a large number of additional signatures which the trial court restored had been illegally rejected by appellant upon the ground that the signers were not lawfully registered to vote at the time of signing said petitions. The court's rulings as to many of those thus restored are not questioned on this appeal, and as to the remainder, the evidence shows that some had been rejected upon the erroneous theory that the deputy clerk before whom the electors made their affidavits of registration had not actually deposited said affidavits in the office of the county clerk prior to the time the electors signed said petitions; while others were illegally rejected by appellant upon extraneous evidence which in the performance of his ministerial duty he had no legal right to consider. (*Ley* v. *Dominguez,* 212 Cal. 587 [299 Pac. 713] ; *Ratto* v. *Board of Trustees,* 75 Cal. App. 724 [243 Pac. 466].)

In the state of the record above set forth, it would seem to be quite unnecessary to indulge in further discussion of appellant's contentions that the evidence is insufficient to sustain the trial court's findings because as above shown far more admittedly valid signatures were restored by the court than were necessary to meet the required minimum number of signatures to initiate the recall election.

■ Another point advanced by appellant is that the trial court's decision contains no specific finding that it was his legal duty as such clerk to certify to said petitions. The answer to this point is to be found in the very finding quoted by appellant on page 41 of his brief. Furthermore, a finding of fact to that effect was not essential because obviously the conclusion as to whether such duty was enjoined on appellant was one of law to be deduced from the provisions of the charter and the general law; and an examination of both shows clearly that such duty is expressly imposed on the city clerk. ■ In this connection, too, appellant argues that the city charter is "a local law" and that inasmuch as the provisions thereof were not introduced in evidence there is no proof to support the above conclusion. There is even less merit in this latter point than in the former, for the reason that it is elementary that city charters such as the one here involved, promulgated under the Constitution as freeholders' charters, have all the dignity of ordinary statutes (*Whitmore* v. *Brown,* 207 Cal. 473 [279 Pac. 447]); and that being so, courts take judicial notice thereof. Moreover, the charter provisions in question were set forth in the petition for the writ, accompanied by appropriate allegations as to appellant's duty thereunder; and no denial thereof was made in appellant's answer.

■ Appellant further contends that in any event the rejection by him of said signatures, if unwarranted, amounted to no more than error in the exercise of a discretionary power which cannot be reviewed or corrected by the court in a proceeding of this kind. The negative answer to this contention is to be found in a number of decisions, among them being *Hartsock* v. *Merritt,* 93 Cal. App. 365 [269 Pac. 757], *Hartsock* v. *Merritt,* 94 Cal. App. 431 [271 Pac. 381], and *Ratto* v. *Board of Trustees, supra.* As said in the first Hartsock case, *supra,* it is the duty of the city clerk to examine the individual certificates, for the purpose of ascertaining whether they comply with the requirements of the charter, and, if a sufficient number of valid certificates are filed, he must certify that fact to the council, and the election must then be called. (*Ratto* v. *Board of Trustees, supra.*) The citizen is entitled to have this duty performed honestly and fairly, and, if it is shown to have been done fraudulently or arbitrarily, the action may be controlled by *mandamus.* Again, in the second Hartsock case, *supra,* the court in restating

the same doctrine says the general rule is that *mandamus* does not lie to compel a public official to exercise his discretion in any particular manner, but where the law imposes upon him specific duties and he either whimsically or arbitrarily refuses to perform those duties, or where his refusal to perform is based upon an erroneous conclusion of his legal duties, or where the right of the individual is so fixed that the refusal of the official to act is a clear abuse of discretion, *mandamus* is the proper remedy. (*In re Holmes,* 187 Cal. 640, 647 [203 Pac. 398]; *Dufton* v. *Daniels,* 190 Cal. 577, 580 [213 Pac. 949]; *Bleuel* v. *City of Oakland,* 87 Cal. App. 594 [262 Pac. 477].) And in dealing generally with this same subject-matter, the Supreme Court in the case of *Ley* v. *Dominguez, supra,* goes on to say that the duties of a city clerk in determining the sufficiency of a petition of this kind are purely ministerial and not judicial, and that under the law he should exercise his powers and perform his duties in such a manner as will whenever possible produce rather than defeat the right of the people in the exercise of their electoral franchise.

Another point urged is that the sponsors of said petitions did not comply with the provisions of the charter in that they did not "forthwith" file proof of service of the notice of intention to circulate the recall petitions. In this regard section 3 of chapter II of article XI of the charter provides that within seven days after the filing of the notice of intention to circulate the recall petition a copy of such notice shall be served in the manner set forth in said provision upon the officer sought to be recalled, and that the affidavit of the party making such service shall be filed "forthwith" with the city clerk. Here such notice of intention was filed with the clerk on June 17, 1935, and was served on the officer sought to be recalled on the following day, June 18, 1935. On June 24, 1935, the affidavit of service was filed with the clerk. It will be noted, therefore, that said affidavit was filed even within the seven-day limitation of time fixed for the service of said notice and more than a month prior to the filing of said petitions with the clerk, which clearly was a substantial compliance with the provisions of the charter.

Appellant cites a section of the charter providing, among other things, that the city attorney shall be the legal adviser of all city officers; and in connection therewith appellant calls attention to testimony given by him at the trial

to the effect that in rejecting said petitions he sought and acted upon the city attorney's advice, which he contends serves as a complete defense against the charge that he acted arbitrarily. It is apparent, however, that where, as here, the evidence shows beyond question that there is no legal justification for such rejection, the fact, if it be such, that it is based upon the advice of the city attorney does not alter the situation.

 Finally, the validity of the trial court's judgment is assailed upon the ground that the officer sought to be recalled was not made a party to the present proceeding nor served with the notice of the institution and pendency thereof. Appellant did not demur to the complaint upon the ground of nonjoinder of parties nor was any application ever made by the officer to intervene. But even assuming appellant is in a position now to raise the question of nonjoinder of parties either in his own behalf or in the interests of said officer, there is no merit in his contention because admittedly the sole purpose of the proceeding was to compel the appellant as city clerk to perform a ministerial duty, and it was not necessary to a complete determination of that question that the officer sought to be recalled be made a party to the proceeding or even be notified of the pendency thereof.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 31, 1936.