[Civ. No. 13556.   First Dist., Div. One.   Mar. 19, 1948.]

JOHN ADAMS et al., Respondents, v. HARRY K. WOLFF et al., Appellants.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Appellants.

Milton Marks and Morris Lowenthal for Respondents.

PETERS, P. J.—The plaintiffs, all civil service employees of the defendant city and county and employed by it as automotive machinists and mechanics, by this proceeding in mandate, for an injunction and for declaratory relief, sought and secured an adjudication that under section 151.3 of the city and county charter they are entitled to receive rates of pay for their services identical with that received in this area in private employment by machinists and mechanics pursuant to collective bargaining agreements by such private employees with their private employers.

The controversy turns upon the constitutionality and proper construction of section 151.3 of the city and county charter as adopted in 1945 and amended in 1946. Prior to 1945, section 151 of the city and county charter contained the conventional provision that the board of supervisors should fix the salaries of all municipal employees after and on the basis of a comprehensive investigation and survey of wages paid in private and public employment for like service. In 1945, the board of supervisors submitted to the electorate a proposal to amend the charter by adding section 151.3 as a new section. This new section was adopted by the people at the November, 1945, election and has been approved by the Legislature. In 1946, an amendment to the new section was proposed to the electors, was adopted by the people, and was approved by the Legislature.

The first sentence of section 151.3 as adopted in 1945 was not changed by the 1946 amendment, is still in effect, and reads as follows: "Notwithstanding any of the provisions of § 151 or any other provisions of this charter, whenever any groups or crafts establish a rate of pay for such groups or crafts through collective bargaining agreements with em-

ployers employing such groups or crafts, and such rate is recognized and paid throughout the industry and the establishments employing such groups or crafts in San Francisco, and the civil service commission shall certify that such rate is generally prevailing for such groups or crafts in private employment in San Francisco pursuant to collective bargaining agreements, the board of supervisors shall have the power and it shall be its duty to fix such rate of pay as the compensations for such groups and crafts engaged in the city and county service.''

It is this portion of the section that is involved in this proceeding. The 1946 amendment provides the procedure for carrying the 1945 amendment into effect. So far as pertinent here, it reads as follows: ''The rate of pay so fixed by the board of supervisors shall be determined on the basis of rates of pay certified by the civil service commission on or prior to April 1st of each year and shall be effective July 1st following: provided, that the civil service commission shall review all such agreements as of July 1st of each year and certify to the board of supervisors on or before the second Monday of July any modifications in rates of pay established thereunder for such crafts or groups as herein provided. The board of supervisors shall thereupon revise the rates of pay for such crafts or groups accordingly and the said revised rates of pay so fixed shall be effective from July 1st of the fiscal year in which the said revisions are determined.''

The plaintiffs are all civil service employees of defendant city and county. In addition, all of the plaintiffs are members of Local 1305 of the International Association of Machinists. It is admitted that at all times pertinent to this proceeding Local 1305 had collective bargaining agreements with all private employers in San Francisco employing automotive machinists, mechanics and fender and body workers, establishing, among other things, rates of pay for all employees in those crafts. It is also admitted that pursuant to such agreements, and from June 1, 1946, down to the date of trial (February, 1947), all private employers of mechanics of the types here involved were paid a fixed sum per week for day work on the basis of a work week consisting of five days, except for those weeks in which certain designated holidays (New Year's Day, Washington's Birthday, Memorial Day, Fourth of July, Labor Day, Admission Day, when celebrated in San Francisco, Thanksgiving Day and Christmas Day) might occur on a work day, in which weeks the same rate of pay was fixed for

a four-day week, with the designated holiday off without loss of pay. It is further admitted that, pursuant to such collective bargaining agreements, increased rates of pay of 10 per cent to 15 per cent respectively were paid for work on the "night" and "midnight" shifts. Such agreements further provided that foremen were to receive 10 per cent in excess of the rates of pay fixed for journeymen.

The defendants, while paying its employees of the classes here involved the five-day week rate above mentioned for day work, with full knowledge of the other provisions of the collective bargaining agreements, have refused to pay its employees for the designated holidays on which they do not work, and have refused to pay the increased rates for the "night" and "midnight" shifts. Defendants concede that, if section 151.3 is constitutional, which they deny, plaintiff foremen are entitled to the added 10 per cent.

No useful purpose would be served in setting forth the provisions of the judgment in detail. Its legal effect was to uphold the constitutionality of section 151.3, and to allow to plaintiffs their claimed rights to holiday pay, increased rates on the two night shifts and increased rates for foremen. There is no doubt that the trial court fixed these allowances in exact accord with the provisions contained in the collective bargaining agreements between Local 1305 and all the private employers of its members in San Francisco. ■ The judgment also directed the defendants from July 1, 1946, and thereafter, to pay to plaintiffs the difference between the actual wages paid and what such wages should have been under the collective bargaining agreements. If the judgment is otherwise correct, there can be no doubt of the propriety of thus awarding a money judgment in a *mandamus* proceeding where other grounds for the issuance of a writ of mandate exist. (*Sonnicksen* v. *Sonnicksen*, 45 Cal.App.2d 46 [113 P.2d 495]; *Murphy* v. *Sheftel*, 121 Cal.App. 533 [9 P.2d 568]; *Scannell* v. *Murphy*, 82 Cal.App.2d 814 [187 P.2d 790]; see cases collected 10 Cal.Jur. §§ 41 and 42, p. 496 et seq.)

On this appeal defendants' principal contentions are that section 151.3 of the charter is unconstitutional in that a municipality is not authorized "to adopt a charter provision which causes and permits the city and county to be governed by private persons *and to charter away its rights*; and if the provision is valid from the constitutional standpoint, it nevertheless violates the general laws of the state which are to the effect that as to public entities there shall be no collective

bargaining. Furthermore, the contracts created by the provision with respect to the city and county, are against public policy and therefore void." (App. Op. Brief, p. 5.) It is also contended that the power to fix the "rate of pay," as those terms are used in section 151.3, relates only to the "basic" rate of pay. Based on this premise it is next contended that the premium pay for holidays and night work is not part of the "basic" rate of pay, but relates to "working conditions." Based on this interpretation it is urged that the section, even if constitutional, has no application. None of these arguments is sound.

■ San Francisco is a chartered city operating under article XI, sections 8 and 8½ of the Constitution. The provisions of such a charter have the force and effect of legislative enactments and are the supreme law of the state with respect to the government of such chartered cities. (*Dalton* v. *Lelande,* 22 Cal.App. 481 [135 P. 54] ; *Stern* v. *City Council of Berkeley,* 25 Cal.App. 685 [145 P. 167] ; *Bottoms* v. *Superior Court,* 82 Cal.App. 764 [256 P. 422] ; *Tilden* v. *Blood,* 14 Cal.App.2d 407 [58 P.2d 381] ; *Yosemite etc. Corp.* v. *State Bd. of Equal.,* 59 Cal.App.2d 39 [138 P.2d 39] ; *Whitmore* v. *Brown,* 207 Cal. 473 [279 P. 447] ; *Hermanson* v. *Board of Pension Commrs.,* 219 Cal. 622 [28 P.2d 21].) ■ A provision of such a charter will not be held to be unconstitutional unless it can be clearly shown to be violative of the state Constitution, and all doubts must be resolved in favor of constitutionality. (*Bourland* v. *Hildreth,* 26 Cal. 161; *San Francisco* v. *Industrial Acc. Com.,* 183 Cal. 273 [191 P. 26] ; *People* v. *Southern Pac. Co.,* 209 Cal. 578 [290 P. 25] ; *Pacific Indemnity Co.* v. *Industrial Acc. Com.,* 215 Cal. 461 [11 P.2d 1, 82 A.L.R. 1170] ; *People* v. *Western Fruit Growers,* 22 Cal.2d 494 [140 P.2d 13] ; *Collins* v. *Riley,* 24 Cal.2d 912 [152 P.2d 169].) Defendants' contention to the contrary is not supported by reason or authority. ■ It is also the law that a charter adopted under the "home rule" provisions of the Constitution, like the state Constitution itself, does not constitute a "grant" of power, but constitutes a "limitation" of power. (*Bank* v. *Bell,* 62 Cal.App. 320 [217 P. 538] ; *Voorhees* v. *Morse,* 1 Cal.2d 179 [34 P.2d 153] ; *West Coast Adver. Co.* v. *San Francisco,* 14 Cal.2d 516 [95 P.2d 138] ; *People* v. *Carter,* 12 Cal.App.2d 105 [54 P.2d 1139] ; *Murphy* v. *City of Piedmont,* 17 Cal.App.2d 569 [62 P.2d 614, 64 P.2d 399].)

■ Defendants base a rather vague argument on the language in section 8 of article XI authorizing cities of certain classes to "frame a charter for its own government." It is argued that such a city "may not frame a charter for its government by agreements between private employers and private employees; *and if the first paragraph of § 151.3 is held to be lawful and constitutional, the people of the city and county of San Francisco are now and will be governed by private individuals* having no city and county connections whatsoever." (App. Opr. Br. p. 8.) In other words, it is urged that by section 151.3 the city has taken from the board of supervisors the power to fix salaries and placed such power in the unions and private employers. Such a provision, so it is claimed, does not constitute a charter provision by a city "for its own government." The argument is rather hard to follow. In *City of Pasadena* v. *Charleville,* 215 Cal. 384, 389 [10 P.2d 745], it is said: "The hiring of employees generally by the city to perform labor and services in connection with its municipal affairs and the payment of the city's funds for services rendered to the city by its employees in the administration of its municipal affairs is not subject to or controlled by general laws." Thus, the hiring and paying of municipal employees is generally a "municipal affair" not subject to or controlled by general laws. This being so, it is too clear to require further comment that a charter provision like section 151.3, which regulates the rates of pay of certain municipal employees, is a provision for the "government" of the municipality within the meaning of section 8 of article XI of the Constitution.

■ The argument that section 151.3 unlawfully delegates powers to private employers and employees under the collective bargaining agreements is equally specious. The prohibition against delegating legislative powers restricts only a legislative body from delegating its legislative powers. It might be that the board of supervisors of a chartered city could not lawfully adopt an ordinance similar to section 151.3. But section 151.3 is not an ordinance, it is a charter provision —an enactment by the people amending the basic organic law of the city. ■ The charter of a city is comparable to the Constitution of the state and governed by the same principles. (*Platt* v. *City and County of San Francisco,* 158 Cal. 74 [110 P. 304]; *Dalton* v. *Lelande,* 22 Cal.App. 481 [135 P. 54]; *Marculescu* v. *City Planning Com.,* 7 Cal.App.2d 371 [46

P.2d 308].) The people of San Francisco, by adding section 151.3 to their ''Constitution,'' have determined how the wages of certain public employees shall be paid, and have provided that the board of supervisors must adopt the rates so fixed. That is not an unlawful delegation any more than a similar provision applicable to the state in the state Constitution would constitute an unlawful delegation.

Somewhat similar to this argument is the contention that section 151.3 violates section 13 of article XI of the state Constitution. That section provides, in part: ''The legislature shall not delegate to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any way interfere with any county, city, town or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments or perform any municipal function whatever.'' It is argued that: ''If the legislature, because of § 13 of the Constitution, could not pass a law similar to the first paragraph of § 151.3, as a law of the State of California governing the city and county of San Francisco, the city and county would likewise have no right to pass such a charter provision unless it was specifically authorized by the Constitution. . . .'' (App. Op. Brief, p. 9.) The obvious answer to this contention is that section 13, *supra,* is a restraint on the state Legislature's right to interfere with municipal affairs and in no way regulates what may be done by a municipal corporation by charter provision. (*Butterworth* v. *Boyd,* 12 Cal.2d 140 [82 P.2d 434, 126 A.L.R. 838]; *American Co.* v. *City of Lakeport,* 220 Cal. 548 [32 P.2d 622]; *Esberg* v. *Badaracco,* 202 Cal. 110 [259 P. 730]; *City of Oakland* v. *Garrison,* 194 Cal. 298 [228 P. 433]; *Mesmer* v. *Board of Pub. Serv. Com'rs.,* 23 Cal.App. 578 [138 P. 935]; see, also, *In re Pfahler,* 150 Cal. 71 [88 P. 270, 11 Ann.Cas. 911, 11 L.R.A. N.S. 1092].)

It is also pointed out that section 8½ of article XI of the state Constitution enumerates some seven matters that may be covered by charters adopted pursuant to section 8. The subject matter of section 151.3 is not expressly covered by any of the classes set forth in section 8½. Apparently it is the thought of defendants that because the subject matter contained in section 151.3 is not expressly authorized in section 8½ of article XI, it is unconstitutional. To state the contention is to refute it. The seven matters expressly authorized by section 8½ cover only a very small part of the powers

that may be set forth in a city charter. If section 8½ by enumerating seven powers impliedly excluded any other, then 95 per cent or more of every city charter adopted under article XI would be unconstitutional. As already pointed out, a charter is a limitation on power not a grant of power.

Another tenuous argument is made to the effect that section 151.3 covers matters of general state concern, and it is argued that the state has already occupied the field so that a charter provision cannot be passed relating to the same subject matter at variance with the state statute. This "occupation of the field" by the state is conceived by defendants to have been effected by section 923 of the Labor Code. That section, in effect, provides that state policy encourages collective bargaining between employers and employees. In *Nutter* v. *City of Santa Monica*, 74 Cal.App.2d 292 [168 P.2d 741], it was held that municipalities were not bound by nor subject to the collective bargaining provisions of the Labor Code. On the basis of this argument and the above cited case, defendants argue that the public policy of this state is "that collective bargaining should exist generally *but not with respect to public corporations.*" (App. Op. Brief, p. 14.) They then rely on the familiar rule that with respect to matters of "general concern" local law is subordinate to the state law. The complete fallacy of this argument is that it assumes, contrary to the fact, that section 151.3 is a charter section providing for collective bargaining by public employees. It is not. The city employees do not bargain with the city to fix wages or other conditions of employment. Section 151.3 does not purport to give the public employees the right to bargain collectively, or otherwise. By that section the people have set up a standard for determining rates of pay that will insure these public employees a wage scale commensurate with wages received by workers in the same field in private industry. It is quite apparent that the "collective bargaining" aspect of section 151.3 is subordinate and incidental to the "rate of wage" aspect, and that the "collective bargaining" aspect does not apply to the public employees. It is clear that the fixing of salaries of municipal employees is a matter of municipal and not general concern. (*Popper* v. *Broderick*, 123 Cal. 456 [56 P. 53]; *City of Pasadena* v. *Charleville*, 215 Cal. 384 [10 P.2d 745]; *Butterworth* v. *Boyd*, 12 Cal.2d 140 [82 P.2d 434, 126 A.L.R. 838]; *Dept. of Water & Power* v. *Inyo Chem. Co.*, 16 Cal.2d 744 [108 P.2d 410]; *Trefts* v. *McDougald*, 15

Cal.App. 584 [115 P. 655]; *Storke* v. *City of Santa Barbara,*
76 Cal.App. 40 [244 P. 158].)

Defendants vigorously assert that section 151.3 con-
tains a "viciousness" that may have "tremendous reper-
cussions" upon city government generally (App. Op. Brief,
p. 21), but they fail to disclose with any clarity what these dire
consequences may be. The same argument was advanced in
the trial court and the trial judge in his memorandum opinion
disposed of the argument by the statement: "The dire effects
which respondent contends will follow this holding are more
or less imaginary." It must be remembered that it is not for
the courts to pass upon the wisdom or policy of a charter
provision. It is our function simply to interpret it and to
determine whether such provision violates a constitutional
provision. As was said in *Watson* v. *Division of Motor Vehi-
cles,* 212 Cal. 279, 285 [298 P. 481]: "The courts have nothing
to do with the wisdom, policy, or expediency of the law, for
the power to make the law carries with it the power to judge
of its necessity, expediency and justice." This fundamental
doctrine has frequently been stated by the courts. (See
*Lelande* v. *Lowery,* 26 Cal.2d 224 [157 P.2d 639]; *Bodinson
Mfg. Co.* v. *California E. Com.,* 17 Cal.2d 321 [109 P.2d 935];
*Wholesale T. Dealers* v. *National etc. Co.,* 11 Cal.2d 634 [82
P.2d 3, 118 A.L.R. 486]; *Max Factor & Co.* v. *Kunsman,* 5
Cal.2d 446 [55 P.2d 177]; *Goodman* v. *Board of Education,*
48 Cal.App.2d 731 [120 P.2d 665].) Most of the arguments
now being advanced by defendants are proper arguments to
have advanced to the electors in 1945 and 1946 when this
charter provision was before the people, but they are not
proper arguments to advance to a court.

The last main contention of defendants is a matter
of interpretation. It will be remembered that the matters in
dispute relate to holiday pay and premium pay on the night
shifts. Section 151.3 requires the "rate of pay" to be fixed
in the manner there set forth. It is contended that this relates
only to the "basic" rate of pay, and that holiday and pre-
mium pay on night shifts does not relate to the "basic" rate of
pay but relates to "working conditions," and it is urged that
the fixing of working conditions is beyond the scope of section
151.3. It is probably true that section 151.3 relates only to
the "basic" rate of pay and does not relate to "working con-
ditions." But that in no way assists defendants. It is quite
apparent that it was the intent of section 151.3 to give to the
public employees of the type here involved the same take

home pay received by private employees in the same industry. That means that when the public employees work on a night shift, or where a work week is interrupted by a holiday they are to receive the same pay that private employees would receive for work similarly performed. It is quite obvious that night shift pay and pay for holidays is a part of the "basic" rate of pay, and is as much a part of the wage structure as the hourly wage itself. If evidence were necessary on such an obvious matter it was supplied by Norman Beals, San Francisco representative for the State Personnel Board, who so testified. The "basic" "rate of pay" is the take home pay of the employee. The charter provision guarantees that the take home pay of public employees shall be the same as private employees. That obviously includes holiday and premium pay for night work.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred

Appellants' petition for a hearing by the Supreme Court was denied May 17, 1948. Shenk, J., and Schauer, J., voted for a hearing.