[Civ. No. 14168. First Dist., Div. One. Nov. 10, 1949.]

JOHN H. ADAMS et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

Dion R. Holm, City Attorney, and William F. Bourne, Deputy City Attorney, for Appellants.

Milton Marks for Respondents.

WARD, J.—This is an appeal by the defendants city and county of San Francisco and the members and secretary of the city and county civil service commission from a judgment entered in favor of approximately 140 civil service machinist employees of the city and county, in which it was decreed by the trial court that plaintiffs should receive and defendants should grant to all of such employees who have had one year's service a vacation of two calendar weeks annually with pay "as long as Section 151 of the Charter of said City and County or any other section of the Charter provides for a vacation of two calendar weeks annually with pay after one year's service irrespective of the provisions of any contract or contracts entered into by and between Automotive Machinists Lodge 1305, International Association of Machinists, and private employers with respect to the subject matter of vacations." It was also declared and decreed that irrespective of such contract or contracts the city and county should grant, allow and pay to plaintiffs "sick leave and disability leave." The above orders were made upon the theory that the allowance is "permitted, directed and guaranteed by the Charter of said City and County; that the provisions of Section 151 of the said Charter, with respect to vacations, and of Section 153 of the said Charter, with respect to sick leave and disability leave, apply to the petitioners and plaintiffs and to all other persons similarly situated; that the provisions of Part I, Sections 375 to 380 of the Municipal Code of the City and County of San Francisco, with respect to vacations, and Section 301, concerning sick leave and disability leave, and the provisions of Rule 30 and 32 of the respondents Civil Service Commission apply to the petitioners and plaintiffs and to all other persons similarly situated; that the provisions of Section 151.3 of the Charter of the City and County of San Francisco relates to and provides for the rate of pay of employees of the City and County of San Francisco and do not apply to, nor do they relate to, the allowance or payment of vacations, sick leave or disability leave." Mention of any question of fact on this appeal is merely incidental to the determination of the question of law, namely: do charter sections 151 and 153, or section 151.3, or other sections determine, as to the employees here involved, the classification of pay for vacations and sick and disability leaves? ■ The subject of vacations may be considered before that of sick and disability leaves.

It is necessary to refer to and quote portions of section 151 of the charter entitled "CIVIL SERVICE" under the subtitle "Standardization of Compensation" which provides that "The board of supervisors shall have power and it shall be its duty to fix by ordinance from time to time, as in this section provided, all salaries, wages and compensations of every kind and nature, *except pension or retirement allowances,* for the positions or places of employment, of all officers and employees of all departments, offices, boards and commissions of the city and county in all cases where such compensations are paid by the city and county." (Italics added.) Certain positions are specified that "shall not be subject to the provisions of this section" which are not involved in the questions presented on this appeal,—for example, "teaching and other technical forces of the school department" and others specifically designated. Section 151 provides that the civil service commission shall prepare and submit to the board of supervisors a schedule of compensations and classifications for adoption by the board, which also "shall adopt amendments to the schedule" from time to time. The section further provides that "The proposed schedules of compensation or any amendments thereto shall be recommended by the civil service commission solely on the basis of facts and data obtained in a comprehensive *investigation and survey* concerning wages paid in private employment for like service and working conditions or in other governmental organizations in this state"; that "The commission shall . . . recommend a rate of pay for each such classification in accordance therewith"; and that "Where compensations for services commonly paid on an hourly or a per diem basis are established on a weekly, semi-monthly or monthly salary basis for city and county service, such salary shall be based on the prevailing hourly or per diem rate, where this can be established, and the application thereto of the normal or average hours or days of actual working time, in the city and county service, *including an allowance for annual vacation.* Every person employed in the city and county service shall, after one year's service, be allowed a vacation with pay of two calendar weeks, annually, as long as he continues in his employment." (Italics added.) With respect to San Francisco Charter, section 151, it has been held that it is necessary there shall be a substantial compliance with a charter provision determining rates of pay for municipal employees but the rates of pay need not be

identical with those fixed in private employment agreements. (*City and County of S. F.* v. *Boyd,* 22 Cal.2d 685 [140 P.2d 666].)

It is admitted that the civil service commission in the adoption of rule 30 permitted a vacation of two calendar weeks and that the amount of compensation allowed would be the amount the employee would earn during his vacation period, if working at his current rate of pay. The *board of supervisors* approved the rule. This was in accord with charter section 151.

A proposed charter amendment was submitted to the electorate which was adopted in 1945, approved in 1946 by the Legislature, and amended as to procedure in 1947. The new section is designated section 151.3 and provides in part: ''Notwithstanding any of the provisions of section 151 or any other provisions of this charter, whenever any groups or crafts establish a rate of pay for such groups or crafts through collective bargaining agreements with employers employing such groups or crafts, and such rate is recognized and paid throughout the industry and the establishments employing such groups or crafts in San Francisco, and the civil service commission shall certify that such rate is generally prevailing for such groups or crafts in private employment in San Francisco pursuant to collective bargaining agreements, the *board of supervisors* shall have the power and *it shall be its duty to fix such rate* of pay as the compensations for such groups and crafts engaged in the city and county service.'' (Italics added.)

Defendants assert, without contradiction, the existence of the following facts: ''1. that during all of the times mentioned in the petition and complaint petitioners and plaintiffs were automotive mechanics, automotive machinists and automotive body and fender workers in the civil service employ of the City and County of San Francisco; and, as members of Lodge 1305, Automotive Machinists, were within the 'groups and crafts' provisions of the Charter Section 151.3; 2. that during all of the times mentioned in the petition and complaint the collective bargaining agreement in force and effect throughout the industry and in San Francisco in establishments employing automotive mechanics, automotive machinists and automotive body and fender workers has provided for only five working days of paid vacation to employees with only one year of service in such employment; that under such same collective bargaining agreement employees in those

groups and crafts are entitled to ten working days of paid vacation only after the completion of three years of service in such employment; . . .''

In a previous case involving holiday and overtime pay the quoted portion of section 151.3 was held constitutional. (Cal. Const., art. XI, §§ 8, 8½ and 13.) In *Adams* v. *Wolff*, 84 Cal. App.2d 435 [190 P.2d 665], it was stated: ''The charter of a city is comparable to the Constitution of the state and governed by the same principles. [P. 441.] . . . Section 151.3 does not purport to give the public employees the right to bargain collectively, or otherwise. By that section the people have set up a standard for determining rates of pay that will insure these public employees a wage scale commensurate with wages received by workers in the same field in private industry. It is quite apparent that the 'collective bargaining' aspect of section 151.3 is subordinate and incidental to the 'rate of wage' aspect, and that the 'collective bargaining' aspect does not apply to the public employees. It is clear that the fixing of salaries of municipal employees is a matter of municipal and not general concern. [P. 443.]''

In addition to the constitutional questions, two special questions presented in *Adams* v. *Wolff, supra,* related to ''holiday pay and premium pay on the night shifts.'' It was declared in that case (pp. 444-445): ''Section 151.3 requires the 'rate of pay' to be fixed in the manner there set forth. It is contended that this relates only to the 'basic' rate of pay, and that holiday and premium pay on night shifts does not relate to the 'basic' rate of pay but relates to 'working conditions,' and it is urged that the fixing of working conditions is beyond the scope of section 151.3. It is probably true that section 151.3 relates only to the 'basic' rate of pay and does not relate to 'working conditions.' But that in no way assists defendants. It is quite apparent that it was the intent of section 151.3 to give to the public employees of the type here involved the same take home pay received by private employees in the same industry. That means that when the public employees work on a night shift, or where a work week is interrupted by a holiday they are to receive the same pay that private employees would receive for work similarly performed. It is quite obvious that night shift pay and pay for holidays is a part of the 'basic' rate of pay, and is as much a part of the wage structure as the hourly wage itself. . . . The 'basic' 'rate of pay' is the take home pay of the employee. The charter provision guarantees that the take home pay of public

employees shall be the same as private employees. That obviously includes holiday and premium pay for night work.''

In brief, the ''rate of pay'' is the ''take home pay'' of those on the list of employees in good standing eligible for active duty. Section 151.3 does not purport to control or supervise the administrative functions of the government with respect to all matters pertaining to civil service employees. The new section is confined to ''rate of pay'' measured by hourly wage and indicates that ''investigation and survey'' were not abrogated but are subordinate to local collective bargaining agreements fixing the rate of pay recognized in the local industrial area in and around San Francisco. Pay for an unworked holiday is part of the basic rate of pay. (*Adams* v. *Wolff, supra.*) The number of holidays is designated in the private collective bargaining agreement. With equal right and authority may the same agreement control the number of vacation days. The *period of vacation*, if any, set forth in a private bargaining agreement is the period that the public employees must accept, for the reason that it is part of the basis upon which ''rate of pay'' is computed. Plaintiffs are bound by the provisions found in section 151.3 until or unless that section is repealed or modified.

Plaintiffs contend that the interpretation placed upon the charter section by the city officials shows an unwarranted discrimination solely against the members of one union and that the interpretation is illogical, irrational and would lead to absurd results. This court may deal only with the particular problems presented. The people of the municipality ''determined how the wages of certain public employees shall be paid.'' (*Adams* v. *Wolff, supra,* at p. 442.) In voting for the adoption of the later charter section it could hardly be contemplated that the provisions in the private bargaining contract for each of the various ''groups or crafts'' (§ 151.3) would be identical.

The citations relied upon by plaintiffs may be distinguished from the present case. *Bay Ridge Operating Co.* v. *Aaron,* 334 U.S. 446 [68 S.Ct. 1186, 92 L.Ed. 1502], involved the question of what constituted the regular rate of pay which the Fair Labor Standards Act [Stats. 1939, ch. 44; 3 Deering's Gen. Laws, Act 8834aa] requires to be used in computing the proper payment for work performed in excess of 40 hours in any work week. The employees involved were casual and transient longshoremen and by the collective bargaining contract were to receive additional pay for working at irregular

hours. This so-called "overtime" for working undesirable hours and the additional pay allowed for working on holidays were to be including in computing "regular rate of pay" by dividing the total wages received by the number of hours actually worked. The court distinguished cases where some provision had been made for excess compensation, and in the Bay Ridge case there were no vacation or unworked holiday problems and the collective bargaining contract did not provide for anything for the year. *Mid-Continent Petroleum Corp.* v. *Keen,* 157 F.2d 310, decided that it was proper in computing overtime compensation under the Fair Labor Standards Act, where there was a fluctuating work week, to subtract the hours the employee was absent because of illness. *Marchant* v. *Sands Taylor & Wood Co.,* 75 F.Supp. 783, held the same where there was a fixed salary, stating that where the contract of employment is for a set weekly wage but the hours of work are variable or fluctuating the rate of pay for the week is the amount of pay divided by the number of hours actually worked. Such cases would seem to substantiate defendants' rather than plaintiffs' arguments. Two New York cases cited by plaintiffs also should be mentioned: *Matter of Giannettino* v. *McGoldrick,* 295 N.Y. 208 [66 N.E.2d 57], and *Jung* v. *City of New York,* 76 N.Y.S.2d 235. Section 220 of the New York Labor Law provided that the "wages to be paid for a legal day's work" to those workmen employed on public works should be the "prevailing rate of wages" paid in the locality. The court held that in establishing such wage no deduction could be made of vacation and pension benefits given city employees. The precise language of the statute on which these cases were based, i.e., "wages to be paid for *a legal day's work,*" in some measure distinguishes the cases from the one here under consideration, which involves, specifically, a rate of pay to be fixed by private bargaining contracts wherein holidays and overtime periods are considered as part of the basic rate of pay. (Italics added.)

In *Adams* v. *Wolff, supra,* it was held that section 151.3 set up a standard of wages for workers in the same industry. This section was adopted subsequent to all other amendments relative to standardization of salaries. In ascertaining legislative intent the purpose sought to be achieved by the statute is a factor (*Steen* v. *Board of Civil Service Commrs.,* 26 Cal.2d 716 [160 P.2d 816]) under the rule that the latest provision in point of time or even in position on the ballot is controlling (*People* v. *Moroney,* 24 Cal.2d 638 [150 P.2d 888]).

Section 151.3 is a charter provision, an enactment by the people amending in part the basic organic law of the city. The holding in *Adams* v. *Wolff, supra,* that section 151.3 was intended to equalize take home pay and that holiday pay is a part of the basic rate of pay must be considered controlling, and forces a determination that vacation pay directly and with certainty affects the hourly, the weekly, the monthly or the yearly wage. This conclusion is fortified by the fact that in section 151 of the charter an "allowance for annual vacation" is specifically mentioned as being a factor to be considered in ascertaining the "salary" or "rate of pay" to be paid to employees. This factor is entitled to some weight in ascertaining what was intended by the "rate of pay" provisions of section 151.3, and leads to the conclusion that vacation allowances are included within the meaning of that concept.

A suggestion has been made that the argument which was presented to the voters might throw some light on the determination of the problem. The arguments pertinent to the precise question merely refer to standardization of salaries in accord with prevailing rates in private and governmental employment.

It must be declared that by reason of the adoption of charter section 151.3 the city and county employee may accept not only the advantages provided thereunder but likewise must submit to the disadvantages that are incidental to its passage. The good must be accepted with the evil in changing the classification for "rate of pay" from the provisions of section 151 to those of section 151.3. "It must be remembered that it is not for the courts to pass upon the wisdom or policy of a charter provision." (*Adams* v. *Wolff, supra,* p. 444.)

"Sick leave and disability leave" present a different problem. Section 151.3 provides "Notwithstanding any of the provisions of section 151 or any other provisions of this charter. . . ." The term "any other provisions of this charter" might include section 153, or any section with a provision establishing the basis of standardization of compensation of certain employees engaged in "city and county service."

Section 153 of the charter, in effect since 1932, provides that "Leaves of absence to officers and employees of the city and county shall be governed by rules established by the civil service commission, . . ." Leaves of absence may be granted for various reasons, as set forth in the section, including service in the armed forces of the United States or the State of Cali-

fornia in time of war, or in time of peace. The board of supervisors, on the recommendation of the civil service commission, may provide for "war effort leaves." Section 153 also provides that "The civil service commission by rule and subject to the approval of the board of supervisors by ordinance, shall provide for leaves of absence, due to illness or disability, which leave or leaves may be cumulative, if not used as authorized, provided that the accumulated unused period of sick leave shall not exceed six (6) months, regardless of length of service, . . ." In section 153 there is no provision that the board of supervisors may fix "salaries, wages and compensations of every kind and nature," as set forth in section 151, nor "rate of pay" as in 151.3. Under the terms of section 151.3 it is the duty of the board of supervisors to fix a "rate of pay" for "service," whereas under section 153 the rules of the civil service commission are merely subject to the approval of the board of supervisors. Civil service commission, rule 32, reads in part: "The officers and employees of the City and County of San Francisco shall be entitled to sick leaves with full pay, and disability leaves in accordance with laws, rules and regulations of the *Retirement Board,* subject, however, in both instances, to the provisions of this rule." (§ 1.) "Officers and employees who are subject to the provisions of Section 153 of the Charter, and who have regularly occupied their positions continuously for at least one (1) year, shall be entitled to two (2) weeks' sick leave, with full pay, annually, during their occupancy of said positions; provided that where it is necessary for the appointing officer to employ and pay a substitute in the stead of an absentee who is paid on an hourly or per diem basis said sick leave shall be without pay for the first five (5) days. Such annual sick leave of two (2) weeks, with pay, when not used, shall be cumulative, but the accumulated unused period of sick leave shall not exceed six (6) months, . . ." (§ 4.) (Italics added.) Sick leave and disability leave are therein defined and the rule was approved by the board of supervisors in part I, section 301, of the Municipal Code (1939 ed.).

It is admitted that the present private collective bargaining agreement does not provide for compensation for sick or disability leaves. Holiday pay, overtime pay and vacation pay all have some remote relation to "working conditions." This is true with respect to the number of hours an employee is required to work when that subject is considered separately

from the amount of hourly wage he receives for work performed. There are two goals to be attained by the employer and employee in the promotion of the employee's welfare, namely, the fostering of better *working conditions* for the employee and *the opportunity for profitable employment*. The aims may be far apart or closely interwoven. The means to obtain the end may converge or diverge. In the present instance the amount to be paid for nonwork on a holiday, a vacation period, or overtime is purely a financial problem and should not be confused with any humanitarian aspect of the charter such as provisions for sick or disability leaves. The purpose of the adoption of section 151.3 is to establish for ''groups or crafts'' a ''rate of pay'' ''pursuant to collective bargaining agreements.'' Sick and disability leaves (§ 153) are somewhat comparable to medical benefits. (Charter, § 172.1.) Civil service commission rule 32 provides for ''sick leaves with full pay, and disability leaves in accordance with laws, rules and regulations of the *Retirement Board* subject'' to certain definitions and limitations as therein set forth. (Italics added.) The retirement board has no authority to fix ''rate of pay.'' On the contrary, it may be classified as a welfare board. Payment for sick leave is a benefit given as an allowance payment on a humanitarian basis in the interest of the employee's welfare.

The fact that sick leave is authorized by the civil service commission ''with full pay'' (rule 32) does not bring payment for sick leave within the purview of ''Basis of Standardization of Compensations'' establishing a ''rate of pay.'' Under the rule hereinbefore quoted, sick leave may be granted for two weeks annually; under certain circumstances it is necessary to pay a substitute, and when sick leave is not used it may be accumulated, but the accumulated unused period of such leave shall not exceed six months (Civ. Serv. rule 32, § 4). Overtime pay is for actual work performed which is definitely ascertainable as to time and amount. Holiday and vacation pay cover certain designated periods and may be ascertained as definitely as regular daily or hourly pay. The sick leave, in fact, may not be used for a number of years, or it may or may not be taken for a longer period than two weeks, subject to the period of accumulation. Payment for sick leave is too indefinite to form the basis of ''rate of pay'' though the real distinction may rest upon the fact that it is welfare pay. Sick leave or disability leave pay is not a gratuity. There is no vested right to such compensation

until the happening of the contingency, namely, disability or sickness, as defined in civil service rule 32. It is compensation paid to an employee in furtherance of "working conditions" inuring to the benefit of both employer and employee, but does not fall within the classification of "rate of pay." This conclusion is strengthened by the internal arrangement of the charter itself. After providing for civil service examinations, method of appointment, etc., section 150 deals with certification of payrolls. Then section 151, logically, provides with respect to "Standardization of Compensation"; section 151.1 with the "Officers Subject to Salary Standardization"; and section 151.3 with "Basis of Standardization of Compensations of Certain Employees" (there being no section numbered 151.2). These sections are all dealing with matters relating to compensation, i.e., rate of pay, of employees. Then section 152 contains a complete change of subject. Its provisions relate to "Service Records." Section 153 then deals with "Leaves of Absence." This arrangement is some evidence that the drafters of the charter intended that leaves of absence should have no relation to the basic rate of pay, but relate to an entirely different class of compensation—welfare —which is referred to herein as "working conditions."

The judgment is affirmed insofar as it declares and decrees that designated plaintiffs should be granted and allowed certain sick leave and disability leave with full pay as prescribed in section 153 of the charter of the city and county of San Francisco; rule 32 of the civil service commission, and part 1, section 301, of the Municipal Code. Otherwise the judgment is reversed. The trial court is directed to revise the findings and judgment to accord with the views expressed herein. Each side is to bear its own costs on this appeal.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 10, 1949, and the following opinion was then rendered:

WARD, J.—■ The main point raised for the first time on this petition for rehearing is that this court should determine the legal effect of a charter amendment relating to vacations adopted by the people of San Francisco at an election on November 8, 1949, which purports to repeal the last sentence of section 151 of the charter of the city and county of

San Francisco relating to vacations, and purports to adopt a new section—151.4—dealing with that subject. Petitioner relies on decisions holding that where the judgment affects the rights of the parties *in futuro* the law in effect when the appellate court renders its opinion, and not the law in effect when the decision was rendered by the trial court, prevails. The rule has no application here. *The new charter provision by its express terms does not become effective until January 1, 1951,* and hence the cases cited are not in point. Moreover, the amendment, in any event, cannot become effective until and if the Legislature approves.

This court expresses no opinion as to the effect, if any, that the amendment approved November 8, 1949, might have on the problem presented on the petition for rehearing. If there is a difference of opinion over the proper interpretation of this amendment after and if it becomes effective, that problem will have to be left to future litigation.

This court held that sections 151, 151.1 and 151.3 of the charter, as they now read, all relate to the subject of compensation. That would be equally true regardless of how those sections were numbered.

Plaintiffs filed an application for leave to produce additional evidence: (1) a copy of the proposed amendment to the charter and arguments with respect to the amendment, and (2) testimony that the electors voted favorably on the proposed amendment at a recent election.

The application to take additional evidence and the petition for a rehearing are denied.

Peters, P. J., and Bray, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 5, 1950. Shenk, J., Carter, J., and Traynor, J., voted for a hearing.