[Civ. No. 14128. First Dist., Div. One. Jan. 31, 1950.]

WILLIAM RANDALL et al., Respondents, v. HARRY K. WOLFF et al., Appellants.

Dion R. Holm, City Attorney, and Bernard J. Ward, Jr., Deputy City Attorney, for Appellants.

Worthington, Park & Worthington for Respondents.

WARD, J.—This is an appeal by the city and county of San Francisco and the members of the Civil Service Commission of San Francisco, as and constituting that body, from the issuance of a peremptory writ of mandate directing that plaintiffs be given the rate of pay received by bricklayers in private employment on the basis that they have been and are doing the same work as bricklayers in private industry and, under provisions of the San Francisco Charter (see §§ 151 and 151.3), are entitled to the same rate of pay.

The amended petition alleges "That during all of said times Section 151 of the Freeholders Charter of the City and County of San Francisco provided that compensation for municipal employees shall be fixed in accord with the generally prevailing rates of wages for like service and working conditions in private employment." The petition further alleges that in 1945 the voters adopted an amendment by the addition to the charter of section 151.3, which was subsequently ratified by the Legislature; that in 1946, section 151.3 was further amended and likewise ratified by the Legislature, so that the section now reads, in the parts pertinent to the question involved, as follows: "Notwithstanding any of the provisions of section 151 or any other provisions of this charter, whenever any groups or crafts establish a rate of pay for such groups or crafts through collective bargaining agreements with employers employing such groups or crafts, and such rate is recognized and paid throughout the industry and the establishments employing such groups or crafts in San Francisco, and the civil service commission shall certify that such rate is generally prevailing for such groups or crafts in private employment in San Francisco pursuant to collective bargaining agreements, the board of supervisors shall have the power and it shall be its duty to fix such rate of pay as the compensations for such groups and crafts engaged in the city and county service."

It is also alleged in the amended petition: "That during all of the times herein mentioned, Petitioners were employees of the City and County of San Francisco, State of California, having a Civil Service rating of Pavers (0264). That the duties regularly required of and performed by Petitioners and each of them in the City and County service as aforesaid and during all of said times consisted of laying brick and paving blocks in and upon the streets, walls, structures and other properties belonging to the City and County of San Francisco, laying cobblestones, raising manholes, basalt work, and in general other duties normally required of a Bricklayer (A 56) which included repair work on walls, constructing arches and the general bricklaying work. . . . That during all of said times and in particular for two years prior to July 1, 1947, Petitioners and Plaintiffs, and each of them, were paid wages of TEN and 30/100 ($10.30) DOLLARS per day, for a five day week, for such work. . . . That the Bricklayers, Masons, and Plasterers' International Union of America is an association of trades unions of comparable unions through-

out the United States organized October 17, 1865, with its headquarters in Washington, D. C. The San Francisco Bricklayers, Stone Masons and Mosaic Terrazzo Mechanics Local Union #7 is a trades union affiliate of the former union, having headquarters in San Francisco, California. That both of said unions were in existence during all of the times hereinmentioned and the Petitioners and Plaintiffs and each of them were members of the San Francisco Union #7. That for a number of years last past, Union #7 has engaged in collective bargaining with various employers and groups of employers in San Francisco and has secured from said employers the recognition of and payment of certain classifications and specified rates of pay for its members and has entered into and executed collective bargaining agreements with said employers pursuant to which said rates of pay and classifications were and are established. That during all of said times Petitioners and Plaintiffs and each of them, were classified as Bricklayers by said Local Union #7 and accepted into membership of said union as bricklayers.'' The petition further alleges certain differentials in pay as due plaintiffs covering specified periods.

The prayer of the petition is to the effect that the court render judgment by way of declaratory relief decreeing that plaintiffs ''are entitled to the rates of pay as referred to in this complaint and petition,'' and that the action of defendants as alleged is in violation of section 151.3 of the San Francisco Charter.

In the answer and return to the petition defendants allege that plaintiffs are paid in accordance with the provisions of section 151 of the charter; that the classification by the civil service commission of plaintiffs as pavers is definite and controlling so far as the issues raised herein are concerned; that the alleged collective bargaining agreements are not binding upon defendants, as the condition prerequisite to the adoption of a rate of pay under section 151.3 has not been established throughout the industry by such employing group. Finally, it is alleged by defendants that section 151.3 is unconstitutional in that it places in the hands of private employees and employers the right to determine matters that may be determined only by a governmental legislative body. The vital contention of defendants, as gleaned from the pleadings, is that the collective bargaining agreements referred to by plaintiffs in this action relate to the craft of bricklayers and not to that of pavers.

The evidence shows that plaintiffs, William Randall and Hugh McGill, entered the city service over 13 years ago by qualifying under a civil service examination for "Pavers" to lay and repair city streets which then were paved with vitrified paving bricks, basalt blocks and wooden blocks. At the time of trial it appeared that plaintiffs were the only employees, either in city or private employment, who were either classified or known as "Pavers." Since July 1, 1947, plaintiffs have received $12.80 a day for a five-day week; since November 11, 1946, bricklayers in private industry have received $2.25 per hour for a six-hour day, with double pay for overtime, based on a five-day week; and from July 1, 1947, bricklayers in the city service have received a daily wage of $18 per day. It was stipulated that there are in existence collective bargaining agreements between the Masons' and Builders' Association of California and the local bricklayers' union in accordance with the terms as set forth in the evidence.

The secretary-treasurer of the bricklayers' union, Mr. J. S. Mazza, testified that he was familiar with the type of work performed by plaintiffs and that plaintiffs were able to perform all the functions of bricklayers. The transcript shows his testimony as follows: "Q. Have you seen the kind of work that they have performed? A. Yes. Q. What type of work is it? A. They have been repairing pavings, paving on brick streets; built retaining walls out of . . . what we call basalt blocks, . . . which is the hollow type, which they were using in building construction as well as used in building fences around homes, and so forth . . . But besides that, the basalt block that they used to use in paving, they have built walls with that and also with the other hollow type of block. Q. Does that work come within the jurisdiction of your Union? A. Emphatically yes, throughout the United States and Canada. Q. What is the title of the employee who does that particular type of work? A. The only titles that we have . . . in our organization, the only distinction that there is between titles in our organization is, we have a bricklayer who serves his time, and in serving his time he is instructed to perform all types of masonry, from brick, stone, terra cotta, tile, and everything else. Q. And that includes basalt? A. That includes everything. Q. Now, is that the type of work which was performed by the petitioners, to your knowledge? A. Yes, that is correct. Q. Are they members of your local union? A. Yes, they are. . . . Q. Mr. Mazza, throughout the United

States are you familiar with the work which is performed by the bricklayers and bricklayers' Unions? A. Yes. Q. To your knowledge is there any governmental agency, or state agency, or municipality, or private employer, who hires men to do the type of work which Mr. Randall or Mr. McGill are doing, without hiring bricklayers? A. No, they hire bricklayers. Q. Is there any instance that has come to your attention in the last, we will say, five years, where bricklayers are not required, and not used on jobs employing the same type of work? . . . A. Exclusive of the City and these two particular men, the work has been done by bricklayers. Q. In other words, in the City and County of San Francisco and these two men, that is the only exception that you know of in the United States? A. That is correct. Q. And when WPA did the paving at the beach and built walls, were bricklayers employed there? A. Yes, sir. . . . Q. In the standard of bricklayers which are sent out from your Union, is there any difference in the degree of skill possessed by bricklayers of your Union, from that possessed by Mr. Randall or Mr. McGill? A. None. Q. Is there any difference in the type of equipment or tools which Mr. Randall or Mr. McGill use in their City jobs, from those used by bricklayers that you send out? A. They use the same tools. Q. Do they use the same type of mortar and filler in their job? A. Absolutely the same.''

In response to questioning similar to the foregoing, a masonry contractor, a member of the board of arbitration of the Masons' and Builders' Association of California, testified as follows: ''When we figure a paving job, we figure to do the job with bricklayers. This job in the Civic Center is classed as a paving job, and in our terms, in masonry terms, that is a paving job, and we figure to do the job with bricklayers.'' It is interesting to note that the secretary of the civil service commission, also an honorary member of the bricklayers' union, who testified that in a general way he was familiar with the classification made by the state, federal and municipal governments, was not permitted to answer, by reason of an objection by the defendants, the following question: ''Let me ask you this . . .: Do you know of any city, municipality or state, or instance, in the last five years, including the Federal government, where a paver was designated and has been employed by any such agency to do the laying of vitrified brick, or building of brick walls?''

At the conclusion of the presentation of plaintiffs' case on May 21, 1948, the defendants made a motion for a

nonsuit based upon the interpretation of section 151.3 of the charter. After argument the motion was ordered submitted by the court. The grounds of the motion are not sufficiently definite and the following minute order dated September 30, 1948, appears in the record: "In this action, heretofore submitted, the Court ordered Motion for Non-suit partially granted and a judgment entered in favor of Plaintiffs from March, 1947." It is not incumbent upon an appellate court to search the record for errors (*People* v. *Chapman*, 81 Cal. App.2d 857 [185 P.2d 424]; *Euclid Candy Co.* v. *International Longshoremen & W. Union*, 49 Cal.App.2d 137 [121 P.2d 91]; *In re Bauer*, 17 Cal.App.2d 426 [62 P.2d 150]) and the absence of any claim that error is directly based upon the order in reference to nonsuit is deemed a waiver of that particular point (2 Cal.Jur., Appeal and Error, § 419, p. 727; *Bauer's Law etc. Co.* v. *Gilleran*, 138 Cal. 352 [71 P. 445]; *Black Rock etc. Dist.* v. *Summit etc. Co.*, 56 Cal.App.2d 513 [133 P.2d 58]).

The court found "That Plaintiffs and Petitioners are entitled to a Writ of Mandate directing Respondents and Defendants to pay Petitioners and Plaintiffs the same salary which is being paid to persons classified as Bricklayers (A 56) in the employ of the City and County of San Francisco . . . that while it is true that Plaintiffs and Petitioners were paid the rate of pay established by the Board of Supervisors in the annual salary ordinance per their classification the action of the Defendants and Respondents, Civil Service Commissioners of the City and County of San Francisco, in submitting to the Board of Supervisors the improper and inadequate rate of pay for Plaintiffs and Petitioners as alleged in Paragraph VI of Defendants' and Respondents' Answer and upon which the Board of Supervisors approved its annual salary ordinance were arbitrary and in abuse of their discretion and were in direct violation of the provisions of Sections 151 and 151.3 of the Freeholder's Charter of the City and County of San Francisco." Thereupon judgment was entered and a peremptory writ of mandamus issued. Defendants appealed from the judgment.

The basic finding that plaintiffs are performing bricklayers' work, as set forth in the bargaining agreements between the employer and employee, is amply supported by the evidence, as appears from the foregoing narration including

the quotations from the reporter's transcript. The test for the particular groups or crafts involved in the present proceeding is collective bargaining agreements fixing the rate of pay in San Francisco, but evidence revealing that in no place in the United States except the municipal government of San Francisco are employees doing the work of "pavers" paid less than bricklayers is a circumstance tending to show custom and the reasonableness of the collective bargaining agreements considered in this proceeding. ■ The defendants call attention to the fact that on the trial the collective bargaining agreements were not introduced into evidence but only marked for identification. However, the pertinent portions of the agreements were stipulated to be correct, which is the equivalent of a failure to deny the specific allegation of plaintiffs' petition on this subject. (See: 23 Cal.Jur., Stipulations, § 12, p. 826; *Sun-Maid Raisin Growers* v. *Jones,* 96 Cal.App. 650 [274 P. 557]; *Michelin Tire Co.* v. *Coleman & Bentel Co.,* 179 Cal. 598 [178 P. 507].)

■ Defendants claim that it is difficult to ascertain from the findings and conclusions whether the trial court relied upon section 151 or section 151.3 in issuing the judgment. There may be some merit to this contention. The method of ascertaining the rate of pay of an employee is not the same under each section. However, the basis of the judgment is charter section 151.3. Hereinafter an order will be made covering this point.

It is contended by defendants that the effect of the judgment will force a reclassification of the plaintiffs' positions in the city and county service. The civil service commission is permitted to classify and reclassify in accordance with duties and responsibilities "all places of employment in the departments and offices of the city and county not specifically exempted by this charter from civil service provisions thereof" (charter, § 141) and has the right to submit to the appointing officer the name and address of the highest eligible to fill a vacancy (charter, § 148, as amended). The sections relied upon by defendants refer to classification and not to rate of pay. The civil service commission may not defeat the recent decision of the electors of the city and county in establishing a "Basis of Standardization of Compensations of Certain Employees" (§ 151.3) by fixing an employee's salary by a method contrary to that used in private employment. Classification does not control "rate of pay" to the exclusion of all other considerations. Section 151.3 provides that "Notwithstanding any of

the provisions of section 151 or any other provisions of this charter," when a collective bargaining agreement is entered into between employers and employees and the rate of pay is recognized and paid throughout the industry and the establishments employing such groups or crafts in San Francisco, the civil service commission shall certify that such rate is generally prevailing for such groups or crafts in private employment in San Francisco pursuant to collective bargaining agreements, and it shall be the duty of the board of supervisors to fix such rate of pay as compensation for such groups and crafts engaged in the city and county service. The section also provides that the civil service commission shall review all such agreements at certain periods each year and certify to the board of supervisors any proposed modifications in the "rates of pay" in accordance with changed conditions or provisions as they appear in the collective bargaining agreements applicable solely to San Francisco as far as the present group or craft is concerned. There is no provision in section 151.3 requiring consideration of classification in determining the "rate of pay." It was not necessary that the trial court make any order with reference to classification. Neither by the allegations nor the prayer of the amended petition is a reclassification sought. It was so stated during the presentation of the evidence. It has been repeated on appeal. The rate of pay must be fixed in accordance with the work performed and not by the appellation given to a certain job by the civil service commission. In *Adams* v. *Wolff*, 84 Cal.App. 2d 435, at page 444 [190 P.2d 665], this court stated: "It is quite apparent that it was the intent of section 151.3 to give to the public employees of the type here involved the same take home pay received by private employees in the same industry"; also, at page 443, "By that section the people have set up a standard for determining rates of pay that will insure these public employees a wage scale commensurate with wages received by workers in the same field in private industry."

Among the separate defenses filed in the answer there is raised the issue of the constitutionality of section 151.3 The point is not stressed in the briefs and has been decided in *Adams* v. *Wolff, supra,* contrary to defendants' views therein.

In view of an affirmance herein of the judgment as pertaining to the order of the trial court directing defendants to pay plaintiffs the same salary being paid to bricklayers together with specified sums representing the differential due

them in wages, it hereby is ordered that, under the provisions of section 956a of the Code of Civil Procedure, all reference in the findings, conclusions of law and the judgment which might be construed as an order for reclassification is to be deemed stricken therefrom.

Based on the identical ground and under the same authority last stated, it hereby is ordered that any statement in the findings, conclusions of law and judgment indicating that the action of the court was based upon section 151 of the charter is eliminated from such document or documents.

Solely upon the ground that the civil service commission violated section 151.3 of the charter, the judgment of the superior court granting a peremptory writ of mandate, as herein modified, is affirmed.

Peters, P. J., and Bray, J., concurred.

The opinion and judgment were modified as follows on February 23, 1950:

THE COURT.—Good cause appearing therefor, it is ordered that the respondents in the above entitled cause shall recover the costs on appeal.