[Civ. No. 17925.   First Dist., Div. Two.   Mar. 11, 1959.]

FRED L. MARTIN et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

Dion R. Holm, City Attorney, and Bernard J. Ward, Deputy City Attorney, for Appellants.

Lamson, Jordan & Walsh, Paul S. Jordan and Stanley Walsh as Amici Curiae on behalf of Appellants.

Marks & Pedersen, Milton Marks, Jr., and Frank C. S. Pedersen for Respondents.

KAUFMAN, P. J.—The plaintiffs are members of Automotive Machinists Lodge Number 1305, and are employed by the city and county of San Francisco in the civil service positions of automotive machinists and mechanics. They sought and obtained a judgment and decree of mandamus, declaratory relief and for compensation against the defendants, city and county of San Francisco, and the members and secretary of the city and county civil service commission, that they were entitled to a certain rate of pay, pursuant to section 151.3 of the Charter of the City and County of San Francisco. This charter provision makes it mandatory upon the city to pay its employees at the same rate of pay as is paid in private industry to the same groups and crafts in accordance with collective bargaining agreements.

This controversy arose on the following facts: For a period of over three years before the filing of this action, the collective bargaining agreement covering automotive machinists in private industry in San Francisco, provided that in addition to a fixed sum payable weekly to the employee, the employer would pay fixed sums in trust to certain trustees, in accordance with a trust agreement executed by representatives of the employers and the representatives of the employees. The trust agreement provided that with the money so paid, the trustees would purchase health and welfare plans and insurance policies to protect the employees and their dependents. The amount paid to the trust fund for such protection by the employer was a fixed sum for each month of work performed by the employee. At this same time, the city was not paying comparable sums for the protection of its employees and their dependents. The city was paying the same fixed weekly sum

to each employee and deducting therefrom a fixed sum for its own health service, under section 172.1 of the Charter of the City and County of San Francisco. Section 172.1 was enacted before section 151.3 and provides in its terms that deductions "shall not be deemed a reduction of compensation under any provision of this charter." (§ 172.1, subd. 4.) The deduction under section 172.1 is a compulsory one in that an employee must participate in the city plan unless he can show that he already has such coverage under another plan. The city plan covers only the protection of the city employee; dependents may be included on a voluntary basis, and without cost to the city. (§ 172.1, subd. 6e.)

The court below found that the monthly payments to health and welfare plan made by private employers under collective bargaining agreements were a part of the rate of pay, and that therefore, the defendant had deprived plaintiffs of the rate of pay to which they were entitled under section 151.3 of the charter, and concluded that the defendants pay to the plaintiffs:

(1) For the three years, preceding February 7, 1956, the date of the filing of this action, such amounts as were paid during this period of time by the private employers under the collective bargaining agreements, to a health and welfare plan on behalf of their employees;

(2) Such amounts as were established from February 7, 1956, to the present, for payments by the private employers under the collective bargaining agreements, (as a fixed sum for each month of work performed by the employee) to a health and welfare plan on behalf of the employees;

(3) Such amounts as may thereafter be established by collective bargaining agreements for such payments by the employer to a health and welfare plan on behalf of the employees.

Plaintiffs now argue that the above result is correct as they were not receiving the same rate of pay as the automotive machinists in private industry in violation of the provisions of section 151.3 of the Charter of the City and County of San Francisco. Defendants argue that the judgment and decrees must be reversed as there was no violation of section 151.3, as the amounts paid for health and welfare protection were not a part of the same "rate of pay" required by the charter provision, and that deductions made under other charter provisions could not be considered in interpreting section 151.3. The Municipal Conference of San Francisco, amici

curiae on behalf of appellants, argues that even if affirmed, the judgment must be modified because a recent amendment to section 172.1 of the Charter of the City and County of San Francisco, requires the city and county, after July 1, 1958, to contribute varying amounts toward the cost of maintaining the health service system, such contributions to equal those made by city and county employees on and after July 1, 1960.

While the precise question here presented has never been determined, this court (divs. I and II) has had several opportunities to construe the applicable provisions of section 151.3 of the city and county charter. As these cases (and not the numerous other authorities cited by both sides) must be the basis for our decision here, and both sides rely on them extensively, we find it necessary to review them in detail. The applicable provision of section 151.3 is as follows:

"Notwithstanding any of the provisions of section 151 or any other provisions of this charter, whenever any groups or crafts establish a rate of pay for such groups or crafts through collective bargaining agreements with employers employing such groups or crafts, and such rate is recognized and paid throughout the industry and the establishments employing such groups or crafts in San Francisco, and the civil service commission shall certify that such rate is generally prevailing for such groups or crafts in private employment in San Francisco pursuant to collective bargaining agreements, the board of supervisors shall have the power and it shall be its duty to fix such rate of pay as the compensation for such groups and crafts engaged in the city and county service."

The first case construing section 151.3, *Adams* v. *Wolff*, 84 Cal.App.2d 435 [190 P.2d 665], was brought against the city and county by members of the same local here involved, under similar circumstances. Two issues were raised and resolved in favor of the employees: first, the constitutionality of section 151.3 and second, the refusal of the city to pay its automotive machinists and mechanics, the same rate of pay established by collective bargaining agreements with all private employers of automobile machinists and mechanics with respect to premium pay for night shifts and pay for certain designated holidays.

In answering an argument that section 151.3 was unconstitutional in covering matters of general state concern in giving public employees the right to bargain collectively,

this court (div. I) said at page 443: "By that section the people have set up a standard for determining rates of pay that will insure these public employees a wage scale commensurate with wages received by workers in the same field in private industry."

On the second issue, which is more pertinent here, the court said at pages 444 and 445:

"The last main contention of defendants is a matter of interpretation. It will be remembered that the matters in dispute relate to holiday pay and premium pay on the night shifts. Section 151.3 requires the 'rate of pay' to be fixed in the manner there set forth. It is contended that this relates only to the 'basic' rate of pay, and that holiday and premium pay on night shifts does not relate to the 'basic' rate of pay but relates to 'working conditions,' and it is urged that the fixing of working conditions is beyond the scope of section 151.3. It is probably true that section 151.3 relates only to the 'basic' rate of pay and does not relate to 'working conditions.' But that in no way assists defendants. It is quite apparent that it was the intent of section 151.3 to give to the public employees of the type here involved the same take home pay received by private employees in the same industry. That means that when the public employees work on a night shift, or where a work week is interrupted by a holiday they are to receive the same pay that private employees would receive for work similarly performed. It is quite obvious that night shift pay and pay for holidays is a part of the 'basic' rate of pay, and is as much a part of the wage structure as the hourly wage itself. If evidence were necessary on such an obvious matter it was supplied by Norman Beals, who so testified. The 'basic' 'rate of pay' is the take home pay of the employee. The charter provision guarantees that the take home pay of public employees shall be the same as private employees. That obviously includes holiday and premium pay for night work."

Defendants here rely on the above language to argue that payments made by the private employer to a health and welfare fund on behalf of the employee, in addition to the regular weekly rate paid, are not a part of the basic rate of pay or take home pay, but are a part of "working conditions." This argument would have some merit if under the particular circumstances of this case, the city employees were receiving the same basic rate of pay as the private industry employees. However, it is admitted here by all concerned,

that the private employee receives a fixed sum, plus a fixed contribution on his behalf to a health and welfare fund, while the city employee receives the same initial fixed sum minus the deduction for the compulsory city health plan.

The second case, *Adams* v. *City & County of San Francisco,* 94 Cal.App.2d 586 [211 P.2d 368, 212 P.2d 272], was also brought against the city by Automotive Machinists, Lodge No. 1305 under similar circumstances. In that case the collective bargaining agreements made no provision for compensation for sick or disability leaves and provided for five working days of paid vacation for employees with one year of service, and ten days after the completion of three years of service. Section 151 of the City and County Charter provided a vacation of two calendar weeks annually with pay for all employees who had one year of service. In reversing the portion of the decree which required the city to grant its employees the longer vacation period provided by section 151, irrespective of the collective bargaining agreement of private employers, this court interpreted *Adams* v. *City & County of San Francisco, supra,* at page 592, as follows:

"In brief, the 'rate of pay' is the 'take home pay' of those on the list of employees in good standing eligible for active duty. Section 151.3 does not purport to control or supervise the administrative functions of the government with respect to all matters pertaining to civil service employees. The new section is confined to 'rate of pay' measured by hourly wage and indicates that 'investigation and survey' were not abrogated but are subordinate to local collective bargaining agreements fixing the rate of pay recognized in the local industrial area in and around San Francisco. Pay for an unworked holiday is part of the basic rate of pay. (*Adams* v. *Wolff, supra.*) The number of holidays is designated in the private collective bargaining agreement. With equal right and authority may the same agreement control the number of vacation days. The period of vacation, if any, set forth in a private bargaining agreement is the period that the public employees must accept, for the reason that it is part of the basis upon which 'rate of pay' is computed. Plaintiffs are bound by the provisions found in section 151.3 until or unless that section is repealed or modified." . . .

"Section 151.3 is a charter provision, an enactment by the people amending in part the basic organic law of the city. The holding in *Adams* v. *Wolff, supra,* that section 151.3 was

intended to equalize take home pay and that holiday pay is a part of the basic rate of pay must be considered controlling, and forces a determination that vacation pay directly and with certainty affects the hourly, the weekly, the monthly or the yearly wage. This conclusion is fortified by the fact that in section 151 of the charter an 'allowance for annual vacation' is specifically mentioned as being a factor to be considered in ascertaining the 'salary' or 'rate of pay' to be paid to employees. This factor is entitled to some weight in ascertaining what was intended by the 'rate of pay' provisions of section 151.3, and leads to the conclusion that vacation allowances are included within the meaning of that concept." (P. 594.)

In affirming the portion of the decree which required that the city grant sick leave and disability leave, irrespective of the collective bargaining agreements, the court said at page 597, sick leave or disability pay is ". . . compensation paid to an employee in furtherance of 'working conditions' inuring to the benefit of both employer and employee, but does not fall within the classification of 'rate of pay' ", and upheld the employees' right thereto on the basis of section 153 of the Charter of the City and County of San Francisco, rule 32 of the civil service commission, and part 1, section 301 of the Municipal Code.

Defendants here argue that the payments made to the welfare fund are like sick leave and disability pay, not a part of the "rate of pay" under section 151.3 but paid in furtherance of working conditions.

Defendants also argue that the ruling in the second Adams case was based on the court's reasoning that overtime, holiday and vacation pay are for definite periods and easily ascertainable and therefore easily a part of the "rate of pay," while sick leave and disability payments are contingent and not vested—and therefore not easily ascertainable. While it is true that the benefits received by employees from the health and welfare trust fund are contingent in nature like sick leave and disability pay, the payments made to the fund by the employer are also fixed sums for a definite period and easily ascertainable. This is the crux of the problem. The proper classification of the payments made by the employers under the collective bargaining agreements, not the benefits received by the employee.

The next case, *Randall* v. *Wolff*, 95 Cal.App.2d 795 [214 P.2d 58], which need not detain us long here, held that the

city and county civil service commission had violated section 151.3, when it fixed the rate of pay of certain municipal employees in accordance with its classification of the work done instead of in accordance with the work performed and the rate of pay given for similar work in private employment.

The most recent case is *Sheehan* v. *City & County of San Francisco*, 124 Cal.App.2d 769 [269 P.2d 678], decided by this court in 1954. This action too was brought against the city by Automotive Machinists Lodge Number 1305, under similar circumstances as the instant case. The collective bargaining agreement in question provided that Admission Day be treated as a paid holiday. During the three years in question, the city had prevented the plaintiffs from working on that day, and had then made a deduction from the weekly wage for that day on the theory that the city could observe any holiday not mentioned in the collective bargaining agreement and need not pay for those days. The court in affirming a judgment in favor of the plaintiffs concluded that the deductions were unauthorized as there was nothing in the collective bargaining agreements permitting a deduction when the employer refused to permit the employee to work and because under the collective bargaining agreements the employees were employed by the week and their wages fixed for that period. In reaching this conclusion the court commented as follows at page 773:

"In another and later case, *Adams* v. *City & County of San Francisco*, 94 Cal.App.2d 586 [211 P.2d 368, 212 P.2d 727], this section of the charter was again considered and again it was interpreted to mean that the 'rate of pay' was synonymous with 'take home pay.' This latter phrase, of course, does not mean the amount of money such employees get home with on payday. There may be deductions for income tax, social security, retirement, attachments and executions against their salaries which would affect the actual amount of money they, respectively, received to take home. It does mean the amount the employees are entitled to receive from their employers to take home as between themselves, the employer and employee, and before any deductions as required by third parties, are made. The section means that if the private employee under his bargaining agreement is entitled to receive before deductions the sum, for example, of $84.50 for a week's work, the city employee, performing the same services, is likewise entitled to receive the same amount for

his week's work. The section and the foregoing decisions seem to be so clear on the point, no further discussion thereof appears to be appropriate.''

██ Under the above definition it is clear that in the instant case the plaintiffs were not receiving the same ''take home pay'' as their counterparts in private industry, because of the compulsory deduction by the employer for the city's health plan. It does not follow, however, that plaintiffs are entitled to receive the amount which was or is paid by private employers into the health and welfare fund. The private employees are not receiving the payments made by their employers. They are receiving the protection which these payments will buy. It is the money equivalent of this protection to which plaintiffs are entitled. If the city's health service system provides a part of this protection at less cost than the private health and welfare fund, the city is entitled to the benefit of that saving. The measure of plaintiffs' recovery should be the amount deducted from their pay for payments to the city's health service system, adjusted upward or downward to compensate for the amount of the difference in cost of like protection in the two systems, plus an additional amount which will reasonably compensate for the broader coverage (i.e., dependents' protection and employees' or dependents' life insurance), if any, afforded by the private system. Similarly, if the coverage given by the city system is broader in any respect, the city should have credit for the value thereof. This amount should in no event exceed the monthly payments made by the private employers to the health and welfare plan.

Section 172.1.11, added to the charter in 1958, provides for contribution by the city to the Health Service System Fund commencing July 1, 1958. The judgment should also be modified to allow credit to the city for such contributions commencing July 1, 1958, in the increasing amounts of such contributions provided for by that amendment.

Judgment reversed, with directions to the trial court to take further evidence to determine the proper amounts to be awarded to plaintiffs in the light of this opinion.

Dooling, J., and Draper, J., concurred.

A petition for a rehearing was denied April 10, 1959, and appellants' petition for a hearing by the Supreme Court was denied May 6, 1959.